**UNARCO BLOOMINGTON FACTORY WORKERS, Appellants,**

**v.**

**UNR INDUSTRIES, INC., Unarco Industries, UNR, Inc., UNR–Rohn, Inc. (Alabama), UNR–Rohn, Inc. (Indiana), Jobal Tube Co., Inc., and Folding Carrier Corp., Debtors (Two Cases).**

Nos. 89 C 5220, 90 C 2180.

United States District Court,
N.D. Illinois, E.D.

Dec. 6, 1990.

Pamela S. Hollis, Hollis and Johnson, Chicago, Ill., J. William Cuncannan, De-Frees & Fiske, Chicago, Ill., Kevin Forde, Kevin Forde Ltd., Chicago, Ill., James P. Hemmer, Bell, Boyd & Lloyd, Chicago, Ill.

Malcolm M. Gaynor, Richard M. Bendix, Schwartz, Cooper, Kolb & Gaynor Chartered, Chicago, Ill., James Walker, James Walker, Ltd., Bloomington, Ill., Clifford Meacham, U.S. Trustee, Chicago, Ill., Neal L. Wolf, Janet C. Baer, Winston & Strawn, Chicago, Ill.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The appellants, Bloomington Factory Workers ("Workers"), have appealed from certain orders entered by the bankruptcy court pertaining to the reorganization of the debtors. We have before us the Workers' appeal from the entry of an injunction order by the bankruptcy court, and motions to dismiss as moot the Workers' appeal from the confirmation order and two orders of the bankruptcy court approving a trust agreement and claims resolution procedure and requiring claimants to follow procedures established by the Trust for resolution of claims prior to bringing any action in court to liquidate values of claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 1982, UNR Industries, Inc., and ten of its subsidiaries and affiliates filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code ("the Code"), 11 U.S.C. §§ 101 *et seq.* The cases were consolidated for procedural purposes. The principal reason stated by UNR for the filing of the bankruptcy petitions was their involvement as defendants in over 17,000 asbestos-related personal injury lawsuits pending in various state and federal courts, exposing them to potential liabilities, high damages, and substantial costs of legal services. Uncertainty as to the extent of these potential liabilities, exacerbated by the refusal of UNR's product liability insurance carriers to defend and indemnify UNR in the asbestos litigation, allegedly placed UNR in an untenable financial position with its institutional lenders. Thus, UNR sought the protection of Chapter 11.

### A. Confirmation and Injunction

Much had transpired in the courts since July of 1982 in arriving at a viable plan of reorganization, but at last, on June 1, 1989, the bankruptcy court entered an order confirming UNR's Plan of Reorganization ("Confirmation Order"). Under the Plan, UNR will pay in full all workers' compensation, administrative and secured claims, as defined in the Plan. UNR's trade creditors and stockholders will receive approximately 37% of new UNR stock issued in accordance with the Plan for claims held prior to UNR's bankruptcy. Prepetition UNR stockholders will retain about eight percent of the company plus receive warrants to purchase more shares at a price fixed slightly higher than market for the stock prior to confirmation of UNR's Plan.

Victim's of asbestos disease are placed in a separate class of individuals for which the Plan makes provision. The class includes asbestos victims who know they have claims against UNR. It also incorporates those who may have been exposed to UNR's asbestos products before the bankruptcy, before confirmation, or after confirmation, but do not yet have an injury or know they have an injury ("Future Claimants"). These individuals do not receive stock directly from UNR. Instead, 63 or 64% of the total of newly issued shares is to be distributed to a trust ("Trust") with the announced purpose of liquidating and paying a portion of both existing claims as well as any claims that may arise in the future as a result of asbestos related injuries. None of these asbestos disease victims will be fully compensated for their injuries. Existing claims will be paid on a pro rata basis. In addition, once an existing claim is liquidated and the Trustees determine the amount to be awarded, they must hold back a portion of the award to ensure that all present and future claim-

ants receive a similar percentage of their claims.

In conjunction with entry of the Confirmation Order on June 1, 1989, the bankruptcy court also entered an order ("Injunction Order") which permanently enjoins all present and future asbestos health claimants from taking any action, directly or indirectly, for the purpose of collecting, recovering or receiving payment of an asbestos disease claim against UNR or any insurance company that settles with UNR. The Injunction was designed as a supplement to the statutory injunctive provisions of Section 524 of the Bankruptcy Code, principally to protect New UNR's stock from being adversely affected as a result of suits by Future Claimants against the reorganized company.

### B. The Trust

On May 25, 1989, just prior to entry of the Confirmation Order, the bankruptcy court granted application for the approval of the UNR Asbestos–Disease Claims Trust. The Workers' original appeal from that order was dismissed as premature because the Trustee nominees had refused to accept the Trust as approved and therefore the trust arrangement had to be modified and a new trust proposed. It was not until February 22, 1990, that the bankruptcy court entered two orders, one approving the Trust Agreement and Claims Resolution Procedures, and the other requiring claimants to follow the procedures established by the Trust for the resolution of claims prior to bringing any action in court to liquidate values of claims ("Trust Orders"). On February 23, 1990, the Trustees executed the Trust Agreement and assumed their duties as Trustees. They have met on several occasions since that date and have taken a series of measures to implement the Trust.

### C. The Present Appeals

The Workers are individuals, or their representatives, who were employed at the UNARCO plant in Bloomington, Illinois. This plant manufactured asbestos products from the early 1950's through 1970. All of the workers were diagnosed as suffering asbestos disease from their exposure to asbestos inside the UNARCO plant. Although the Workers were employees of Unarco and suffered asbestos-related injuries as a result of their exposure to asbestos in the course of their employment, there is dispute as to whether their claims against the estate are Class 5 Asbestos–Disease Claims, subject to the Trust, or Class 2 Workmen's Compensation Claims, or both. See UNR Response at 21, 36 n. 18 (claiming that the Workers are members of Class 5); Workers' Brief at 23 (disputing that the definition of worker's compensation claims in the Plan excludes prepetition claims of employees); Workers' Reply at 19 (indicating that Workers may have tort claims against UNR, independent of their workers' occupational disease claims).[1]

The Workers have appealed from the Injunction, Confirmation, and Trust orders. The Injunction Appeal is before us on the merits. Prior to a briefing on the merits of the other two appeals, however, UNR has moved to dismiss the appeal from the Confirmation Order as moot and the Trustees of the UNR Asbestos–Disease Claims Trust have moved to dismiss the appeal from the Trust Orders as moot.

### II. INJUNCTION APPEAL

The Workers' challenge the June 1, 1989 Injunction Order on the following grounds. The Workers maintain that the bankruptcy court did not have subject matter jurisdiction to enter an injunction binding future claimants and that such an injunction, to the extent it purports to adjudicate the rights of persons who do not yet possess claims, violates Article III of the Constitution which limits federal court jurisdiction to actual "Cases and Controversies." The Workers also contend that the bankruptcy court lacked the power to enter the Injunction insofar as it bars the Workers from recovering under workers' compensation bonds, policies and funds pledged to the State. The Workers further claim that the

---

**1.** The significance of this dispute will be discussed in further detail below.

bankruptcy court had no authority under Section 105 or in equity to enter the injunction because 1) the Injunction violates state criminal laws forbidding employers from restraining employees from pursuing their rights under workers' compensation laws; 2) the Injunction conflicts with Section 524(e) of the Bankruptcy Code by discharging the claims of nondebtors; and 3) the Injunction impermissibly channels claims to a limited fund without preserving priorities to that fund. Finally, the Workers argue that, based on the evidence, the issuance of the Injunction was clearly erroneous.

### A. Standing

UNR and several of the amici that filed briefs in opposition to the Workers' Injunction Appeal first contend that the Workers lack standing to challenge the Injunction Order. UNR relies on the principle that a person who seeks to appeal an order of the bankruptcy court must be directly and adversely affected pecuniarily by it. *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641 (2d Cir.), *cert. denied, MacArthur v. Johns–Manville Corp.* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). UNR maintains that the specific challenges raised by the Workers as grounds for their appeal relate only to rights and interests of the future claimants. UNR therefore seeks dismissal of the Workers' entire appeal as an impermissible assertion of the future claimants' rights by the Workers, as opposed to the assertion of their own interests.

■ In response, the Workers correctly point out that UNR has overstated its premise for dismissal of the entire appeal since several of the Workers' challenges clearly relate to the Injunction's direct affect on their own economic interest. These challenges derive from the Injunction's regulation of the Workers' pursuit of workers' compensation claims and civil suits against New UNR and other parties. The Injunction Order prohibits the Workers from pursuing any claims against UNR and certain insurance companies other than through the Trust mechanism, which will assure

them at best of only of partial recovery of their claims. The Workers undoubtedly possess a pecuniary interest in the resolution of such challenges sufficient to confer standing to raise them on appeal.

■ Specifically with respect to the Injunction's provisions concerning the Future Claimants, however, UNR contends that the Workers may not assert the rights and interests of the Future Claimants because the Workers' interest is opposed to that of the Future Claimants. But the Workers rely on precisely that point in arguing that their economic interest is directly affected by provisions in the Injunction concerning Future Claimants. The Workers do not purport to act as proponents of the rights of the future claimants. Rather, the Workers maintain that they have standing to argue that the bankruptcy court had no jurisdiction to include future claimants within the Injunction since a ruling on that issue would directly affect the Workers' pro rata share of recovery from UNR's bankruptcy.

The Workers' ultimate goal evidently is to bar Future Claimants from recovery out of the proceeds allocated to the Trust Fund, thereby ensuring a greater pool of money available to pay the Workers' claims. From that perspective, the Workers' economic interest is directly affected by the inclusion or exclusion of the Future Claimants in the pool of claimants seeking to recover from the Trust; the Workers are affected pecuniarily only to the extent the future claimants are allowed to make claims against the money in the Trust. The Injunction Order, however, is not the vehicle by which that interest is affected. The Plan, as approved by the Confirmation Order, and the subsequent orders implementing the Trust provide the authority and procedures for future claimants to be paid out of the Trust. A finding, for whatever reason, that the bankruptcy court could not enjoin suits brought by Future Claimants would have no direct effect on whether or not the Workers would have to share Trust funds with the Future Claimants. The Workers' pecuniary injury is tied to that sharing arrangement, not to

any prohibition against bringing suit. Accordingly, the Workers do not have standing to challenge the Injunction Order insofar as it concerns the prohibition of suits brought Future Claimants. *Cf. id.* at 641 (limiting appeal to contentions that assert a deprivation of appellants own rights).

### B. Substantive Challenges to the Injunction

#### 1) Actions on workers' compensation bonds

During the confirmation hearing, the Workers objected to the Injunction on the ground that it would prevent them from recovering against surety bonds and excess insurance pledged to the State of Illinois by UNR to guarantee that UNR's employees are paid for their workers' compensation and occupational disease claims. Ill.Rev. Stat., Ch. 48, ¶ 138.4 *et seq.* and ¶ 172.36 *et seq.* (1987). The bankruptcy court indicated that it was not prepared to adjudicate the Workers' alleged rights under those bonds at the confirmation hearing, and expressly reserved jurisdiction to consider whether the Injunction order encompassed the workers' compensation bonds and policies introduced by the Workers at the hearing. To date, however, the Workers have not sought such a determination from the bankruptcy court.

Instead, shortly after confirmation, the Workers resumed proceedings against New UNR before the Illinois Industrial Commission. These proceedings had been stayed during UNR's Chapter 11 case. This action supposedly was taken in order to collect from the bonds, policies and a public fund. As a result of that action and at UNR's request, the bankruptcy court conducted an evidentiary hearing on March 20, 1990, and entered an order finding the Workers' counsel in contempt of court.

■ In light of the contempt citation against their counsel, the Workers contend that bankruptcy court has impermissibly construed the Injunction to bar them from

recovering under the workers' compensation bonds, policies and funds pledged to the State. The Workers, however, have incorrectly characterized the basis for the contempt order.[2] The bankruptcy court found Workers' counsel in contempt based on a finding that Workers' counsel knew or should have known that the Injunction, of which he was clearly aware, prohibited further attempts to proceed with the claims before the Industrial Commission without first obtaining leave of court. *See* Mem. op. dated March 20, 1990, at 6 (UNR Ex. E). Acknowledging the Worker's objections to the scope of the Injunction and the bankruptcy court's jurisdiction to enter it, the bankruptcy court censured Worker's counsel for failing to seek a modification of the order as to scope, or to appeal on the jurisdictional issue prior to taking action before the Commission. *Id.* at 7–8. The bankruptcy court's primary concern was that the Workers' proceedings before the Industrial Commission named Unarco and UNR as respondents. The bankruptcy court pointed out that if Workers' counsel "wishes to file an independent action not naming the Debtors, that may be a horse of a different color. That, however, is not the case before the Court today.... The Court orders Walker to restrain from taking any action, naming the Debtors as respondents, in support of his efforts to advance the cause of the Appellants." *Id.* at 8, 11.

Thus, the bankruptcy court's order was not predicated on a resolution of the issues concerning the scope of the Injunction with respect to an action only on the bonds. Accordingly, the matter has not been finally decided. The bankruptcy court had retained jurisdiction for the specific purpose of ascertaining whether or not the bonds, policies or funds constituted property of the estate and would therefore be subject to the permanent prohibitions of the Injunction. The Workers' proper remedy therefore is to obtain a ruling from the bankruptcy court as to these issues. According-

---

**2.** Workers' counsel apparently has not appealed from the contempt order. In certain respects, the portion of the Workers' appeal that we address in this section would appear to constitute a collateral attack on the contempt order. We shall consider the contempt proceedings only insofar as they bear upon the substantive attack on the Injunction.

ly, we dismiss the appeal from this aspect of the Injunction as premature.

■ In so doing, we reject the Workers' broad contention that the bankruptcy court lacked jurisdiction to make any determination whatsoever with respect to the bonds, policies and actions before the Industrial Commission. The bankruptcy court clearly possesses jurisdiction to determine its own jurisdiction. Additionally, it has jurisdiction to decide whether matters involve property of the estate. The Workers' argument is predicated on the assumption that the actions on the bonds and policies before the commission have been permanently foreclosed by the Injunction. In light of the bankruptcy court's retention of jurisdiction to consider precisely that issue, the assumption is clearly erroneous.

We acknowledge that, in retrospect, the Injunction as presently and temporarily construed may in fact be too broad—if the bankruptcy court ultimately finds that Workers' position with respect to the bonds is correct. But until that final determination has been made, the present breadth of its scope is within the equitable power of the bankruptcy court to impose. Indeed, the Workers have never contested the enforcement of the automatic stay that temporarily enjoined prosecution of their Industrial Commission actions filed prior to confirmation, although consistent with the case upon which they now rely, *In re Mansfield Tire and Rubber Co.*, 660 F.2d 1108 (6th Cir.1981), they might have raised such a challenge.[3]

2) Section 105 and equitable authority to enter the Injunction

*a) Violation of state criminal law*

The Workers argue that the Injunction exceeded the court's authority to enter it because it violates state criminal laws that forbid employers from restraining employees from pursuing their workers' compensation claims under the Illinois Workers' Occupational Diseases Act. Ill.Rev.Stat., Ch. 48, ¶ 172.36 *et seq.* (1987).

■ We first observe that the Workers do not deny UNR's claim that the Workers failed specifically to raise this argument before the bankruptcy court. The Workers only made generalized allegations of illegality which focused on the Injunction's provision for Future Claimants. At no point did the Workers refer to the Illinois statute or present to the bankruptcy court the argument they now wish to make before us. Having failed to raise this issue below, the Workers are precluded from raising it on appeal.

■ In any event, in addition to this procedural preclusion, the argument substantively is without merit. The Workers rely on Illinois Revised Statutes, Ch. 48, ¶ 172.39, which provides:

(h) It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce any employee in any manner whatsoever in the exercise of the rights or remedies granted to him by this [Workers' Occupational Disease] Act.

The Workers contend that UNR, by instituting the contempt proceedings discussed above, is using the Injunction Order to restrain the Workers from pursuing their workers' compensation and occupational disease act rights in violation of this criminal statute. This argument is directed at the conduct of UNR, which is undeniably an employer within the meaning of the statute. UNR's conduct, however, relates to the enforcement of an order of a bankruptcy court. Therefore, the only restraint on the Workers' pursuit of their workers' compensation rights comes by virtue of the Injunction Order and not by UNR's efforts to enforce the Order; UNR's conduct is meaningless outside the context of the Or-

---

**3.** In *Mansfield Tire,* the court concluded that: Paying claims out of either the Insurance Fund or the posted surety bonds does not result in the enforcement of a money judgment against the debtor or its estate. Mansfield does not, and could not, claim any interest, legal or equitable in those surety bonds.

The continuing administration of the workers' compensation claims will, therefore, have absolutely no effect on the estate of the debtor. *Id.* at 1115. We make no finding, however, concerning the relevance or precedential effect of that conclusion. That is a matter that first should be addressed to the bankruptcy court.

der. And it is plainly evident that this criminal provision does not control the action of any court with respect to workers' compensation claims. Thus, there is no basis for finding that the Order violated state criminal law.

The Workers make two additional points that we will briefly consider. They first contest UNR's assertion that the Workers no longer possess workers' compensation rights by virtue of UNR's discharge in bankruptcy under section 524 of the Bankruptcy Code. The Workers reiterate that a portion of the Workers' rights relate to recoveries from parties other than UNR on the surety bonds and a public security fund. They claim that the Injunction is illegally interfering with those rights. As we have indicated, however, the bankruptcy court has yet to decide whether the Injunction reaches those claims. And even if the bankruptcy court finally decided that the Injunction should prohibit the claims, the Illinois statute does not criminalize the actions of a federal court. The Workers' only proper avenue of redress from such an order would be with this Court.

The Workers also maintain that the Plan retains the Workers' rights against UNR by providing that prepetition workers' compensation claims shall be paid in full, and therefore the confirmation of the Plan did not discharge the Workers' employee rights against UNR. At the outset, we find this argument curious, since the predicate for the argument is that Workers are entitled to full recovery of benefits under the Plan as Class 2 workers' compensation claimants. Yet, the Workers have spent a good portion of their briefs arguing how they will be adversely affected by the Plan's provision for Future Claimants as the Class 5 Asbestos–Disease Claimants. Looking to other portions of the briefs, this contradiction may be explained by the fact that the Workers apparently believe they possess both occupational disease and tort claims against UNR. It is also evident that UNR disputes that the Workers' are entitled to any recovery within Class 2. Clearly, this too is matter for the bankruptcy court to initially determine or clarify.

Leaving that concern aside, we see no basis for the Workers' contention that their claims have not been discharged. Regardless of whether the Workers' may be deemed to possess Class 2 or Class 5 claims, or both, the Workers are clearly preconfirmation creditors whose prepetition occupational disease rights and tort law rights have been eliminated by confirmation of the Plan. *See,* 11 U.S.C. § 1141(a) (provisions of a confirmed plan bind any creditor); *In re Columbia Packing Co.,* 34 B.R. 403 (Mass.1983) (workers' compensation claims against the debtor may be treated as general unsecured claims). The Workers terminology that these rights have been "retained" by the Plan is incorrect insofar as the Workers imply that claims based on those rights have somehow been excepted from discharge. Those rights as against UNR may now only be enforced by filing a claim with the bankruptcy court and seeking a distribution in accordance with the Plan. Indeed, the Injunction Order notwithstanding, further action against New UNR by the Workers based on these claims is prohibited by the injunction which arose automatically under Section 524(a)(2) of the Code upon confirmation of the Plan.

*b) Injunction against Settling Insurers*

The Workers next challenge the bankruptcy court's authority to enjoin suits against the products liability insurers ("Settling Insurers" or "Insurers") who settled with UNR. They claim that such a prohibition is inconsistent with Section 524(e) of the Bankruptcy Code which states: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for such debt." Section 524(e) has been construed to permit a tort claimant to sue a debtor's tort liability insurer despite discharge. *In re Jet Florida Systems, Inc.,* 883 F.2d 970 (11th Cir.1989). The Workers maintain that without the Injunction, UNR's Insurers would still be liable to them for asbestos claims.

There are several problems with this argument. As a threshold matter, the Workers' argument rests on two assumptions: that they possess rights under the policies issued by those carriers and that Illinois law would allow a direct action against the Insurers. Yet it is undisputed that each of the insurance policies at issue contains an exclusion for workers' compensation and occupational disease claims. Thus, to the extent the Workers' claims arise under the Occupational Diseases Act, even without the Injunction, any action against UNR's comprehensive general liability carriers would be barred by the express exclusions contained in the policies. Recognizing this point, the Workers assert that they additionally possess intentional tort claims against UNR that could be covered by policies containing exclusions for employee claims. The Workers, however, have failed to cite any Illinois authority that would allow them to bring direct actions against the insurers on the policies. Thus, on the record they have presented, their assumption lacks the requisite foundation for asserting such a claim of right.

■ In addition, even if such authority existed we do not believe it would extend to allow recovery against insurers who had settled in good faith with their insureds. The policy discussed in *Jet Florida Systems*, which at common law supports a direct action against an insurer when the insured is insolvent, is not implicated in this case. In *Jet Florida Systems*, the court was concerned that the "fresh start" policy of the Bankruptcy Code not be used as a defense against a common law action to

> provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured.... Far from holding that insurers should be protected from liability, ... the insurance company should not be entitled to gain a benefit that was not intended or in any way computed within the rate charged for its policy. *Id.* at 975 (citation omitted).

Such a concern with the potential for a windfall to the insurer does not come into play, however, when an insurer has reasonably satisfied its contractual obligations to indemnify its insured for the claims made against it. As long as such a settlement has been reached in good faith, there is no reason for allowing a party to sue the insurer directly, since the insurer normally owes no direct obligation to such parties. To allow such a suit after settlement presents the opposing risk that the insured will enjoy the windfall. Thus, we are of the view that once the Insurers reached a good faith settlement with UNR, any direct obligation which might otherwise have been imposed at common law to the Workers on behalf of UNR were discharged. Accordingly, even with respect to the purported intentional tort claims, the Workers effectively did not have any rights against the settling Insurers to enjoin.

■ Moreover, even if we go beyond the state law predicate, the same reasoning applies in the bankruptcy context to support the conclusion that Section 524(e) does not limit the bankruptcy court's equitable jurisdiction to enjoin suits against the settling insurers. Here, the bankruptcy court approved UNR's settlements with the insurers and found that the monies consequently paid to UNR by the settling carriers constituted property of the estate. The Workers neither objected to, nor appealed from, any of these orders. Thus, the orders are binding upon the Workers. Acknowledging this fact, the Workers contend that even if the policy proceeds are estate property, the only case to dismiss the conflict with Section 524(e) was *In re A.H. Robins Co.*, 880 F.2d 694, 702 (4th Cir.1989), and in doing so, the Fourth Circuit rejected the Seventh Circuit's decision in *Union Carbide Corp. v. Newboles*, 686 F.2d 593 (7th Cir.1982). Having made such an assertion, however, the Workers have failed to discuss how these two cases relate to the present situation.

In our view, the two cases are not entirely inapposite. *A.H. Robins* effectively limited or distinguished *Newboles*, but did not reject it outright. In approving an injunction similar but, in important respects, even broader than the one at issue here, the Fourth Circuit in *A.H. Robins* stated:

Some courts have held that § 524(e) and its predecessor, § 16 of the 1898 Bankruptcy Act, results in the bankruptcy court having no power to discharge liabilities of a nondebtor pursuant to consent of creditors as part of a reorganization plan. See ... *Newboles*.... However, the Fifth Circuit has stated that '[a]lthough section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court, the statute does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of reorganization.' *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir.1987).

*A.H. Robins*, 880 F.2d at 702 (footnote omitted). The Fourth Circuit concluded

> In this situation where the Plan was overwhelmingly approved, where the Plan in conjunction with insurance policies provided as a part of a plan of reorganization gives a second chance for even late claimants to recover where, nevertheless, some have chosen not to take part in the settlement in order to retain rights to sue other parties, and where the entire reorganization hinges on the debtor being free from indirect claims *such as suits against parties who would have indemnity or contribution claims against the debtor*, we do not construe § 524(e) so that it limits the equitable power of the bankruptcy court to enjoin the questioned suits.

*Id.* (emphasis added). All of these considerations apply in this appeal and weigh strongly in favor of affirming the Injunction. But such a result must accord with *Newboles*.

In *Newboles*, two personal guarantors of a promissory note executed by the debtor sought to avoid their own liability on the note to promisee Union Carbide. The guarantors argued that their liability was erased by Union Carbide's approval of the plan which provided that acceptance of a discharge payment would constitute a full settlement not only against the debtor but also "against any other persons or entities who have entered into guaranty or indemnity agreements with unsecured creditors

or who have endorsed commercial paper for the benefit of the Debtor." *Newboles*, 686 F.2d at 594. They maintained that such approval of the plan and acceptance of a discharge payment from the debtor worked an accord and satisfaction under Indiana Law which the district court was obligated to respect. Finding that a bankruptcy discharge arises by operation of federal bankruptcy law, and not by contractual consent of the creditors, the Seventh Circuit held that just as bankruptcy court has no power to discharge the liabilities of a bankrupt's guarantor, a creditor's approval of the bankruptcy plan does not discharge the bankrupt's guarantors either. *Id.* at 595. The Seventh Circuit predicated this holding on Section 16 of the 1898 Bankruptcy Act, which is identical to Section 524(e) in all relevant respects.

Certainly in *Newboles*, the equitable factors upon which the court in *A.H. Robins* relied in affirming an injunction did not exist. Further, the guarantors in *Newboles* received a complete discharge of liability without giving anything in return to the estate or to the creditors who had relied upon their guarantee. An additional reason for not protecting such guarantors from suit is that they possessed an independent obligation to satisfy the notes, an obligation that ran directly to the creditor Union Carbide. In this case, we find it significant that the Injunction does not foreclose suits against insurers or other guarantors who had not reached a settlement with UNR prior to confirmation. These nonsettling insurers are in a position similar to that of the insurer in *Jet Florida* and the guarantors in *Newboles*, who sought to avoid any liability on their obligations simply by virtue of the discharge of the debtor. If the Injunction prohibited suits against these insurers (assuming such suits may be brought), the potential conflict with Section 524(e) is more apparent and a consideration of the equitable factors in *A.H. Robins* might then be required.

The Settling Insurers, by contrast, are in a different situation, one which we believe escapes any conflict with Section 524(e) and therefore does not require us to decide

whether the approach of the Fourth Circuit in *A.H. Robins* should be applied here. The Insurers' obligations on the policies were settled by UNR, and those settlements were approved by the bankruptcy court as part of the process of settling claims against property of the estate. The bankruptcy court undeniably possessed authority to settle claims involving the property of the estate, in this case, the insurance policies. The Workers have at no time contested the bankruptcy court's finding that it was in the best interests of the estate to accept the substantial cash payments made on the policies by the Settling Insurers rather than to carry on the expensive, hazardous and burdensome litigation that had dragged on through the courts for over six years. Significantly, all of these events occurred prior to discharge. Once the proceeds of the insurance litigation became part of the estate, the bankruptcy court clearly had authority to protect that property. Although the Seventh Circuit has not directly addressed the Section 524(e) issue, it has specifically approved of the principle that the power of the bankruptcy court under Section 105(a) includes the power to issue an injunction enjoining third parties from pursuing actions which are the exclusive property of the debtor estate and are dismissed pursuant to a settlement agreement. *In re Energy Cooperative, Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) (citing *MacArthur Co. v. Johns Manville Corp.*, 837 F.2d 89 (2nd Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (affirming district court's order approving settlement between debtor and insurers and enjoining all future suit against insurers relating to settled policies).[4] Accordingly, the Injunction was necessary to preserve the settlement that was approved as part of the reorganization prior to discharge. Similar to the common law analysis above, Section 524(e) is not implicated since at the time of discharge, the Settling Insurers no longer had obligations under the policies that might improperly have been affected by the discharge of UNR on its debt.

### c) Channeling of claims to a limited fund.

In their final jurisdictional challenge, the Workers assert that an injunction which channels claims to a limited fund without preserving priorities to that fund is invalid. The Workers maintain that even if the bankruptcy court had authority to settle portions of the insurance litigation, the bankruptcy court was obligated to preserve what the Workers contend is the asbestos claimants' priority to the insurance proceeds and a trust that is fully funded to pay all claims. The Workers object to the fact that, unlike the channelling order pioneered in the *Manville* case, all of the insurance proceeds will not go to the asbestos victims' trust, but rather that some will be paid to New UNR to capitalize its business operations. They are concerned that since UNR shareholders and trade creditors retain a 37% stake in UNR, they will in effect receive 37% of the insurance proceeds. Thus, they argue that UNR's Plan and the Injunction "combine to effectively reorder priorities in the insurance proceeds by taking away 37% of the funds from the tort victims and turning them over to UNR shareholders and trade creditors." Workers' Brief at 30.

Here too, however, the Injunction itself does not effect the "channelling" about which the Workers now complain; it is the Plan which has that effect. The more appropriate place to raise such a challenge would therefore be in the Confirmation Appeal, which is presently subject to a motion to dismiss. Thus, we shall take up this issue below.

### 3) Clear error

██ The Workers finally contend that the bankruptcy court's issuance of the Injunction was improper due to the absence of sufficient evidence to support its issuance. The findings of fact upon which

---

**4.** Although Section 524(e) was never expressly mentioned in *MacArthur*, the issue as framed by the appellant required substantially the same analysis required here. The appellant argued that the injunctive orders constituted a *de facto* discharge in bankruptcy of nondebtor parties not entitled to the protection of Chapter 11. *MacArthur*, 837 F.2d at 91.

the bankruptcy court based its decision to issue the Injunction Order must be affirmed unless clearly erroneous. Bankruptcy Rule 8013; *McFarland v. Farmers Production Credit Association*, 38 B.R. 374 (N.D.Iowa 1984).

The Workers' chiefly point to an alleged lack of evidence to support the finding that New UNR could not survive post-confirmation asbestos-disease lawsuits without the Injunction. The Workers contend that the bankruptcy court's finding of irreparable harm without the Injunction was based on an inadequate record which consisted only of the testimony of only one witness presented by UNR in support of the Injunction. UNR points out, however, that not only was this testimony undisputed at the time of the hearing, it was also corroborated by the entire record in the case, a record with which the Bankruptcy Judge was thoroughly familiar. Counsel for the Workers was present when UNR offered the testimony of its witness, Henry Grey, regarding the necessity of the Injunction. Although it was evident that Mr. Grey's opinion would provide the expert basis for the bankruptcy court's findings, Workers' counsel did not cross examine or otherwise object to Mr. Grey's testimony. In addition, our own review of other aspects of the record indicates an evidentiary basis for the bankruptcy court's specific findings contained in the Injunction Order. After reviewing the findings of the bankruptcy court, and the transcripts of proceedings before the Bankruptcy Judge, we find that the bankruptcy court was not clearly in error in concluding that a successful reorganization hinges on New UNR's ability to operate free from claims of persons who might not be creditors and whose claims might not otherwise be subject to the discharge provisions contained in Section 1141(d)(1)(A) and the correlative injunction contained in Section 524(a)(2) of the Bankruptcy Code.

### III. MOOTNESS OF CONFIRMATION AND TRUST APPEALS

Both UNR and the Trustees have moved to dismiss the respective appeals in which they are involved on the grounds of mootness. In exercising our discretionary power to dismiss an appeal on mootness grounds, we must "scrutinize each individual claim, testing the feasibility of granting the relief against its potential impact on the reorganization scheme as a whole." *In re AOV Industries*, 792 F.2d 1140, 1148 (D.C.Cir.1986); *see also In re Block Shim Development Co.*, 113 B.R. 256 (N.D.Tex. 1990). Thus, although significant portions of post-confirmation transactions may be immune from review on mootness grounds, it is possible that relief may be afforded with respect to certain claims that would not materially impact on the debtors reorganization. *Block Shim*, 113 B.R. at 261–62.

Before considering the question of mootness with respect to specific issues in each appeal, we briefly take up the arguments raised by both UNR and the Trustees to the effect that we should afford great weight in our determination to the fact that the Workers delayed and then failed in seeking a stay of the Confirmation Order and never sought a stay of the Trust Orders. All of the parties dedicate substantial portions of their briefs discussing the significance of the Workers' alleged dilatoriness in seeking a stay as grounds for dismissal under the "equitable mootness" doctrine. *See e.g., In re Roberts Farms, Inc.*, 652 F.2d 793, 798 (9th Cir.1981). After reviewing the calendar of events in following entry of the Confirmation Order in June and early July, 1989, we find that the Workers pursued a stay of execution of the order with sufficient diligence to avoid the equitable mootness doctrine's form of estoppel. Furthermore, given the fact that the Workers ultimately failed to obtain a stay on the merits, any dilatoriness on their part in seeking a stay is largely irrelevant to any equitable determination against them with respect to bringing an appeal from the Confirmation Order—implementation of the Plan would have proceeded no matter how quickly the Workers sought a stay.

Regarding the Trust Orders, the situation is slightly different, but not so

much as to present an equitable barrier to the Trust Appeal. The Workers' attempt and failure to obtain a stay of the Confirmation Order also included an attempt and failure to obtain a stay of the order originally approving and implementing the asbestos-claims trust. The dismissal of the appeal from the original trust as premature did not occur until November 3, 1989, several months after the request for stay had been denied. The Workers maintain that after the bankruptcy court finally approved the original trust and the amendments to the trust in February, 1990, they did not repeat their request for a stay pending this second appeal since three courts already had denied their previous request. They acted on the belief that it "would have been a futile waste of legal and judicial resources to repeat the motion for a stay six months after the last Court had ruled too much had already occurred." Worker's Reply at 6. We find that assessment to have been made in good faith and to be well founded, although we observe that a request for a stay of only the Trust Orders might have received different treatment when presented on its own, out of the context of the earlier request for a stay as to the Injunction and Confirmation Orders which pertained more comprehensively to the reorganization as a whole, as opposed to only a relatively discrete aspect of the Plan.

We therefore shall focus our mootness inquiry as to both the Confirmation and Trust Appeals on the issue whether it is possible to grant effective relief to the Workers. In conducting this inquiry our goal is to pretermit "merits resolution only as to discrete aspects of the plan that have been so substantially consummated that effective relief is unavailable." *Block Shim*, 113 B.R. at 258.

### A. Confirmation Appeal

In favor of its motion to dismiss the Confirmation Appeal, UNR contends that the Plan has become so far implemented that we as a reviewing court can no longer grant any effective relief with respect to issues raised by the Workers as grounds for reversal of the Confirmation Order. Since the Confirmation Order was entered the Trust has been approved and the Plan has otherwise been implemented in several respects. Shareholder warrants and shares of New UNR common stock have been publicly traded. An interim distribution of New UNR stock to holders of allowed Class 4 claims has occurred. Class 1 priority claims have been paid and continue to be paid. UNR has acquired assets from third parties and granted liens to secure the purchase price of those assets. Numerous entities have transacted business and extended credit in good faith and reliance upon implementation of the Plan and the resulting economic viability of New UNR.

To the extent the Workers seek to pursue their original goal of having the Confirmation Order reversed in its entirety and the estate liquidated under Chapter 7, the appeal is clearly moot by virtue of the many transactions which have already occurred. The Workers further maintain, however, that none of these transactions renders it impossible for us to reverse the Confirmation Order at least with respect to the specific points of error which they assert: 1) that future claimants should not have been permitted to share distributions with existing Class 5 creditors; 2) that all of the insurance proceeds meant for tort victims should have been allocated to the Trust for those injured instead of to UNR for working capital; or 3) that since they are former employees, the Workers have received unequal treatment by virtue of their claims being classified as Class 5 asbestos-disease claims as opposed to Class 2 workers' compensation claims.

In response, UNR contends that allowing any of the relief sought by the Workers would necessitate an entirely different reorganization plan. It maintains that such a change would have a substantial and detrimental effect on what has already transpired under the plan.[5] We

---

5. UNR also posits that there is nothing in the law which gives this Court, or any other court, the power to fashion and impose a plan on the parties in a Chapter 11 case. UNR maintains

agree that the Plan has been implemented to such a degree that it would be impossible to grant relief based on the first two issues without effecting the kind of substantial and detrimental change that the mootness doctrine disallows. An alteration of the Plan's provisions for recovery by future claimants and the bar of suits by future claimants against New UNR would undermine the economic foundation upon which numerous innocent third parties relied in purchasing stock and transacting business with New UNR. Relief based on the second point of error would require diversion of all of the settlement proceeds to the Trust. That action would significantly reduce New UNR's stated level of capitalization, thereby additionally undermining the economic foundation upon which third parties have relied in transacting business with UNR, and effecting a major change in the value of the stock distributed under the Plan to the creditors and Asbestos–Disease Trust as the quid pro quo for the overwhelming approval of the Plan. Accordingly, we grant the motion to dismiss these challenges on mootness grounds.

■ As to the third challenge, involving the question whether the Workers claims have been improperly classified, UNR has failed to show, and we have found no basis for concluding that it would be impossible to grant relief to the Workers in the event the issue is resolved in their favor. *Cf. AOV*, 792 F.2d at 1150–54 (reaching issue of whether certain creditors had been improperly classified or received unequal treatment, notwithstanding mootness of other claims based on substantial implementation of a plan of reorganization). Before the Workers' challenge may be considered on its merits, however, we observe that the Workers' standing to assert this third ground for reversal is predicated on the assumption that the Workers in fact are classified only as Class 5 claimants and not as Class 2 claimants. As we have pointed out, there is considerable dispute among the parties as to this question and none of the parties has directed us to any place in the record where the bankruptcy court has expressly decided the issue. If the Workers are Class 2 claimants, entitled to payment of their claims in full, then they would appear to have nothing to complain about in this appeal. Therefore, we remand this issue to the bankruptcy court for a determination of this issue in order to clarify whether the Workers possess standing or even need to make this challenge.[6]

## B. Trust Appeal

■ According to the Workers, most of the issues they raise with respect to the Trust Appeal deal with how an asbestos claim is determined under the trust and claims procedures, which may be amended by the Trustees at any time. They maintain that effective relief can be granted by changing the Trust procedures to allocate funds differently among claimants and to reduce expenses. They assert that such changes would not materially affect the underlying stability of the reorganization. The Workers also contend that insofar as they are challenging procedures which govern the future conduct of the Trustees mootness plainly is not a consideration. *Block Shim*, 113 B.R. at 262; *cf. also In re Johns Manville Bankruptcy*, 1990 WL 66631, 1990 U.S.Dist. LEXIS 5976 (E.D. N.Y. and S.D.N.Y., May 15, 1990), 1990 U.S.Dist. LEXIS 7578 (E.D.N.Y. and S.D. N.Y., June 1, 1990), and various orders from July 9, 1990 through November 6, 1990 (orders imposing stays of payment

that the power of this Court on appeal is limited to affirming or reversing the Confirmation Order. UNR misses the point, however, that the arguments raised by the Workers are points of error charging that the bankruptcy court lacked the authority to confirm a plan which contained the objectionable elements. UNR has cited to no applicable authority that would prohibit the bankruptcy court from modifying its Confirmation Order on remand.

6. This same threshold question of standing also would have precluded immediate consideration of the first two challenges on the merits, even if the challenges had not been rendered moot. The Workers' are affected by the allocation of the insurance proceeds and the sharing of Trust funds with future claimants only insofar as the Workers possess or might otherwise need to assert Class 5 claims.

and processing of asbestos claims and establishing a means for reviewing and potentially reorganizing the procedures of the Manville Trust).

In support of their argument that the Trust Appeal is moot, the Trustees have catalogued the actions which they have taken since the Trust Orders were entered.[7] *See* Trustees Mem. at pp. 3–5. For the most part, these actions have been purely administrative in nature and relate to setting up the office, hiring staff, securing a line of credit for the Trust, and obtaining insurance. As far as we can discern, no payments have yet been made to any claimants under the Trust. The Trustees have failed to explain why the challenges would require the bulk of the actions they have taken to be undone, *see* Trustees Mem. at 9, or how the Workers challenges to the Trust procedures would materially impact on the reorganization. *AOV*, 792 F.2d at 1149 (holding that the resolution of the particular claim would "not affect the reemergence of the debtor as a revitalized corporate entity"). Without further revelation concerning such propositions, we cannot accept the Trustees' assertion that "too much has happened for the eggs to be unscrambled." *Id.* at 8. Accordingly, we deny the motion to dismiss the Trust Appeal as moot.

Here again, however, before allowing the Workers to proceed on the merits of this appeal, we are concerned about the Workers' standing to challenge the Trust procedures, which rest on the same unresolved issue as to the proper classification of the Workers' claims under the Plan. Accordingly, the remand of this issue for consideration of the bankruptcy court applies to the Trust Appeal as well.

## CONCLUSION

With respect to the Injunction Appeal, we find that the Workers lack standing to challenge the Injunction Order's prohibition of suits brought by Future Claimants. We dismiss as premature, the Workers' challenge regarding the scope of the Injunc-

tion's prohibition with respect to pursuit of workers' compensation remedies against entities other than UNR. We affirm the Injunction Order against the challenges that it was entered in violation of state criminal law and that it impermissibly enjoined suits against the Settling Insurers. We dismiss the challenge regarding the channelling of claims as improperly raised in the Injunction Appeal.

We dismiss the Confirmation Appeal as moot with respect to challenges to the Plan's provisions for Future Claimants and the allocation of the proceeds from the insurance settlements. Although we find that the classification challenge is not moot, we remand this issue to the bankruptcy court for a clarification as to whether the Workers possess Class 2 or Class 5 claims so that we may determine whether the Workers have standing to raise this challenge. In addition, we deny the Trustees' motion to dismiss the Trust Appeal as moot, but find that the Workers' standing to appeal from the Trust Orders also depends on how the Workers' claims are classified under the Plan, and therefore subject this appeal to the same order on remand. It is so ordered.

---

7. The Workers point out that many of these events actually occurred before the final order approving the Trust was entered. Workers Response at 14–15.