**UNARCO BLOOMINGTON FACTORY WORKERS, Appellants,**

v.

**UNR INDUSTRIES, INC., UNARCO Industries, Inc., UNR, Inc., UNR–Rohn, Inc., (Alabama), UNR–Rohn, Inc., (Indiana), Jobal Tube Co., Inc. and Folding Carrier Corp., Defendants.**

No. 89 C 5220.
Bankruptcy Nos. 82 B 9841–9845, 82 B 9847, 82 B 9849 and 82 B 9851.

United States District Court,
N.D. Illinois, E.D.

April 19, 1993.

Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chicago, IL.

Neal L. Wolf, Winston & Strawn, Chicago, IL.

J. William Cuncannan, DeFrees & Fiske, Chicago, IL.

James P. Hemmer, Bell, Boyd & Lloyd, Chicago, IL.

Richard G. Smolev, Sachnoff & Weaver, Ltd., Chicago, IL.

James Walker, James Walker, Ltd., Bloomington, IL.

*MEMORANDUM OPINION
AND ORDER*

ASPEN, District Judge:

Appellants UNARCO Bloomington Factory Workers ("Workers") originally appealed from several orders entered by the Bankruptcy Court relating to the reorganization of UNR Industries, Inc. and ten of its subsidiaries ("UNR"). Workers appealed issues relating to the confirmation of the reorganization plan ("Confirmation Appeal"), an injunction ("Injunction Appeal"), and an asbestos disease trust ("Trust Appeal"). In *UNARCO I*[1] we disposed of the Injunction Appeal, in *UNARCO II*[2] we ended further proceedings on the Confirmation Appeal. Now, all that remains is the Trust Appeal. Workers have appealed from two orders entered by the Bankruptcy Court, one approving the Trust Agreement and Claims Resolution Procedures by which asbestos disease claimants may pursue claims against the asbestos disease trust ("Trust") provided for in the Confirmation Order, and one requiring claimants to follow the Trust procedures for resolving claims before bringing any action in court to liquidate the value of claims. The Trustees

of the Trust ("Trustees") now move to dismiss the Trust Appeal as moot. For the reasons set forth below, we grant their motion.

**I. Factual Background**[3]

Under UNR's reorganization plan, confirmed in June, 1989, a trust was to be created to assume and resolve the company's asbestos health claims. The Bankruptcy Court approved the initial terms of the Trust in May, 1989. On June 9, 1989, Workers filed a notice of appeal from the original Trust, as well as from the plan confirmation and an injunction prohibiting claimants from suing the reorganized UNR or the insurers settling with the company. Workers then unsuccessfully sought a stay pending appeal from the Bankruptcy Court, the District Court, and the Seventh Circuit Court of Appeals.

Meanwhile, the designated Trustees, concerned by various provisions in the original Trust, submitted recommended changes in an Application for Supplemental Order Approving the UNR Asbestos–Disease Claims Trust Documents. In February, 1990, the Bankruptcy Court approved the amendments, and further ordered claimants to utilize the established claims resolution procedures before filing a lawsuit (collectively, "Trust Orders"). Again, Workers appealed the original Trust as well as the Trust Orders, but this time they did not seek a stay pending appeal.

The Trustees sought to have the Trust Appeal dismissed as moot, arguing that since the Trust Orders were entered, "too much [had] happened for the eggs to be unscrambled." At that time, however, we found that "[f]or the most part, [the Trust's] actions [had] been purely administrative in nature," and "[a]s far as we [could] discern, no payments [had] yet been made to any claimants under the Trust." *UNARCO I* at 283. Additionally, we found that the Workers' failure

---

1. *UNARCO Bloomington Factory Workers v. UNR Industries, Inc.,* 124 B.R. 268 (N.D.Ill.1990) ("*UNARCO I*").

2. *UNARCO Bloomington Factory Workers v. UNR Industries, Inc.,* No. 89 C 5220 (N.D.Ill. Dec. 10, 1992).

3. A comprehensive factual history of this appeal is set forth in our original decision, *UNARCO I,* 124 B.R. 268. At this time, we will only restate those facts necessary for the disposition of this motion.

to seek a stay of the Trust orders did not create grounds for "equitable mootness." *See e.g., In re Roberts Farms, Inc.,* 652 F.2d 793, 798 (9th Cir.1981). In reaching this conclusion, we took into account the fact (1) that the Workers had unsuccessfully attempted to obtain a stay of the Trust Orders, and (2) that the Workers based their decision not to seek a stay of the Trust Orders on the good faith and well-founded belief that such an effort would have been futile. We observed, however, "that a request for a stay of only the Trust Orders might have received different treatment when presented on its own...." *UNARCO I* at 281. Although we denied Trustees' motion to dismiss, we declined to rule on the merits until the Bankruptcy Court classified the Workers' claims on remand.

From the remand until now, the Workers have not sought a stay of the Trust Orders. Consequently, the Trustees have begun resolving claims. Under the approved Trust Agreement and Procedures, claimants have three options in liquidating their claims. Option One requires no valuation of the claimant's injury, providing simply for immediate payment of a flat sum. Options Two and Three both require valuation of a claimant's award, and then either immediate partial payment and staggered payments over time (Option Two), or a deferred claim (Option Three).

From late 1991 until the present, the Trust has paid out more than $31,000,000 in liquidating approximately 75,000 claims, out of the more than 163,000 claims filed with it. All of the resolved claims were liquidated under Option One, with no money having been paid out, to date, under Options Two or Three.[4]

## II. Discussion

Trustees seek to dismiss Workers' Trust Appeal as moot. Arguing that Workers failed to obtain a stay of the Trust Orders pending appeal, and that, in the absence of a stay, the Trust has processed and liquidated tens of thousands of claims, Trustees contend that the Court can no longer grant Workers effective relief. We agree.

### A. Failure to Obtain a Stay

■ Trustees maintain that, under the equitable mootness doctrine, Workers are estopped from bringing this appeal since they failed to obtain, or even seek, a stay of the Trust Orders pending appeal. *See e.g., In re Roberts Farms, Inc.,* 652 F.2d 793, 798 (9th Cir.1981). In addition to other factors, when applying the mootness rule, "a court may consider whether, within the facts of the case, it would be highly inequitable to reverse the Bankruptcy Court's order." *In the Matter of Andreuccetti,* 975 F.2d 413, 418 (7th Cir.1992), *citing In re Roberts Farms,* 652 F.2d at 798. There is no dispute that Workers promptly sought a stay of the original Trust approval, nor is it controverted that the Bankruptcy Court, the District Court, and the Seventh Circuit denied their request. Finally, we found Workers' decision not to repeat their efforts to gain a stay following their appeal of the Trust Orders to be reasonable and made in good faith. Trustees contend, however, that Workers have been dilatory in failing to seek a stay since *UNARCO I.*

In *UNARCO I,* this Court expressly observed that

> a request for a stay of only the Trust Orders might have received different treatment when presented on its own, out of the context of the earlier request for a stay as to the Injunction and Confirmation Orders which pertained more comprehensively to the reorganization as a whole, as opposed to only a relatively discrete aspect of the Plan.

*UNARCO I,* 124 B.R. at 281. Nonetheless, Workers failed to seek a stay of the Trust Orders, despite the fact that Trustees began sending notices to potential claimants and settling claims.

■ Parties are not required to seek or obtain a stay pending appeal, particularly when they believe that such an effort would amount to a futile waste of legal and judicial resources. *See In re AOV Industries, Inc.,* 792 F.2d 1140, 1147 (D.C.Cir.1986); *In re*

---

4. The Trustees claim that the Trust has amended the process whereby it liquidates Option Two

claims and expects to resolve thousands of such claims this year.

*Public Service Company of New Hampshire,* 963 F.2d 469 (1st Cir.1992). Workers contend, as they did in *UNARCO I,* that in light of their unsuccessful efforts to seek a stay at the outset, they reasonably and in good faith believed that further efforts would be useless.

While we found this to be true at an earlier stage of the litigation, it is less so now. Effectively, Workers have sat by as the Trust implemented the Trust Orders. Consequently, claimants made decisions about which liquidation option to elect based upon the approved claims procedure, and Trustees liquidated claims and paid out millions of dollars as calculated and required under the Trust Order. In light of our observation in *UNARCO I,* and the large-scale activation of the Trust, Workers could, and should, have sought a stay to preserve the status quo and the possibility for relief. In the absence of a stay, Trustees were entitled to treat the Trust Orders as final, and begin liquidating claims according to their provisions. The consequence of Workers' lack of diligence, then, is that circumstances may have mooted their appeal.

### B. Practicability of Relief

■ In general, "a court may consider a challenge to a reorganization plan moot and unreviewable 'when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available.'" *Andreuccetti,* 975 F.2d at 418, quoting *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport,* 841 F.2d 92, 96 (4th Cir.1988). That is, if a court would be unable to grant effective relief to the appellant, were he to prevail, then it should dismiss the appeal as moot. In determining whether a given appeal is moot, a court should weigh the interests of finality, the extent of the plan's consummation, and the degree to which circumstances have changed and impacted the potential for effective relief. *Id.* Courts, then, are charged

with the delicate task of balancing parties' good-faith reliance on a judgment and confirmation, and an appellant's right to seek review of an adverse, and possibly flawed, order. *Id.*

In undertaking this endeavor, the Seventh Circuit has declared that "the reviewing court must 'scrutinize each individual claim, testing the feasibility of granting relief against the potential impact on the reorganization scheme as a whole.'" *Id.* quoting *In re Public Service Co. of New Hampshire,* 963 F.2d 469, 473 (1st Cir.1992). In this spirit, we will examine the issues on appeal to determine what relief appellants seek, and whether such relief is practicable at this point.

Although Workers have designated six issues on appeal, some of these issues simply represent alternative grounds for the same relief. Rather than looking at each issue in turn, then, we will evaluate the relief sought to ascertain whether we are in a position to provide it.[5]

### (i) Liquidating Claims in Article III Courts

■ On several different grounds, Workers seek the right to have their claims liquidated in an Article III court, rather than through the Trust and Claims Resolution Procedures.[6] Workers further maintain that changing the liquidation procedure to allow claimants to value their claims before an Article III judge is still practicable at this juncture, since Option One claims, the only claims that have been resolved, did not require valuation and therefore are unaffected by changes in the valuation procedures. This view, however, misses the point.

While Option One claims do not require valuation, Trustees point out that the three options, and their procedures, are interrelated—one cannot be changed without affecting the others. For example, had Option One claimants known they could have their claims valued in a jury trial before an Article III judge, they might have elected Option Two or Three.

---

**5.** Because the Trust is a critical component of the reorganization plan, we will treat relief that significantly threatens or affects the Trust as impracticable.

**6.** Workers claim that forcing creditors to liquidate their tort claims through the Trust and Claims Resolution Procedures violates their Due Process rights and runs afoul of 28 U.S.C. § 157(b)(2)(B). Workers' Brief at p. 4.

Similarly, the amount of the flat payment available under Option One is contingent upon the liquidation procedures established for Options Two and Three. The purpose of the Trust is to equitably compensate claimants from a limited fund. Accordingly, in calculating the amount of the flat payment to be made under Option One, Trustees had to assess the likely costs associated with liquidating the Option Two and Three claims. In making these computations, Trustees relied on a relatively litigation-free valuation process for Option Two and Three claims. Changing the liquidation procedure to include valuation in an Article III court would significantly raise the costs of resolving claims under Options Two and Three and, consequently, lower the appropriate amount of the flat payment under Option One.

In light of the large number of claims already settled under Option One, and the vast sums paid out, it is too late to recalculate the amount of the flat payment, nor is it practical or desirable to reclaim the Option One payments. Accordingly, we dismiss as moot those portions of the appeal seeking valuation of claims in an Article III court.

### (ii) Voiding the Trust Amendments

■ On several different grounds, Workers contend that the Bankruptcy Court erred in approving amendments to the Trust and Claims Resolution Procedures after the original Trust was approved.[7] The relief for such errors, presumably, is to reverse that court's decision to approve the amendments, thus reestablishing the original trust and its resolution procedures.[8] In order to determine whether this relief is practicable, we must first determine what changes this would effect in the claims resolution process currently in place.

Workers offer us a critical bit of guidance in their brief. They explain that if workers prevail on these issues, they would be entitled to have their claims valued in a jury trial before an Article III judge. Workers' Brief at p. 6. As we explained above, however, the introduction of a more costly valuation procedure now would wreak havoc on the calculations already made in reliance on the current procedure as well as the choices already made by claimants in electing Option One, Two, or Three. These portions of Workers' appeal, then, must also be dismissed as moot.

### (iii) Adding Creditor Safeguards

■ Finally, Workers seek to import additional creditor safeguards into the Trust and Claims Resolution Procedures, claiming that, under the Bankruptcy Code, creditors are entitled to swift payment processing, control of expenses, restriction of payments to existing creditors, and the right to object to other claims.[9] Relief for such claims would entail equipping the Trust with the outlined safeguards.[10]

At the very least, the addition of some of the requested creditor protections would raise Trust costs. Enhanced levels of Trustee liability would raise insurance premiums, while resolving contested claims would result in additional costs and delays. As discussed above, however, any material changes in liquidation costs impacts decisions irreversibly made about the flat payments.

In addition to affecting costs, other requested protections could well alter Trust objectives. As we read it, the Trust is charged with settling all current and future claims. Workers envision a system in which the Trust pays only existing creditors. In addition to embracing a very different notion of the Trust's purpose, such a proposal would significantly affect the disbursement of mon-

7. Workers contend that the post-confirmation amendments were material modifications in violation of 11 U.S.C. § 1127, were negotiated by parties in a conflict of interest, and "effected changes so sweeping as to eliminate all common features of a trust facility, and create an entirely different scheme of duties, indemnity obligations and claim procedures than what were presented to asbestos claimants who voted for UNR's plan." Workers' Brief at pp. 5–6.

8. We note that workers object to the original trust as well.

9. Workers argue that the Bankruptcy Court erred in a approving a resolution procedure "which fail[s] to provide basic creditor safeguards inherent in the Bankruptcy Code for distribution of a limited fund." Workers' Brief at p. 4.

10. Workers also contend that because the Trust provisions allow the Trustees to amend the procedures at any time, the relief they seek must be available.

ey to claimants under the three options. With a smaller pool of creditors to pay, the flat payment under Option One might well have been larger. The payments under Option One, however, have already been made, and the deadline for choosing Option One has already passed. The eggs, then, have already been scrambled.[11]

While some of the requested safeguards, like swift payment processing and control over Trust and Claims Procedure expenses, seem innocuous enough, they, like the others, involve hidden expenses. In sum, the imposition of additional safeguards at this point would involve higher Trust costs, and might well involve more important structural and philosophical departures from the goals on which the Trust is predicated. Accordingly, the relief for this claim is effectively unavailable to Workers, and their appeal is therefore moot.

### III. Conclusion

For the foregoing reasons, we grant appellees' motion to dismiss. It is so ordered.

---

11. While it is possible for the Trust to recalculate the flat payment under Option One, supplement those claimants' settlements, and then reopen the deadline for choosing Option One to accommodate those claimants who might be drawn by the higher payments, the mootness doctrine is designed to prevent just this sort of large scale altering of a plan that is well underway. *See Miami Center Ltd. Partnership v. Bank of New York*, 838 F.2d 1547, 1555 n. 7 (11th Cir.1987), *cert. denied*, 488 U.S. 823, 109 S.Ct. 69, 102 L.Ed.2d 46 (1988).