435 So.2d 1076 (1983)
Wayne CARTER, Individually and as Administrator of the Estate of his Minor Child, Kelli Carter
v.
SAFECO INSURANCE CO., et al., Louisiana Farm Bureau Mutual Insurance Co. and State Farm Automobile Insurance Company.
No. 82 CA 0919.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
*1077 William J. Knight, Franklinton, E. Gordon Schaefer, Jr., Metairie, for plaintiff.
James E. Moore, Baton Rouge, for defendant.
Before COVINGTON, LANIER and ALFORD, JJ.
*1078 ALFORD, Judge.
The disposition of this case on appeal involves the resolution of two questions presented the trial judge: (1) Did Safeco Insurance Company act unreasonably and in bad faith when settling the claims arising out of the automobile accident involved herein, and (2) Was the trial judge correct when he denied plaintiff's request to amend his petition after judgment. Because we agree with the determination of the trial judge on both counts, we affirm his decision and dismiss these appeals at plaintiff's costs.
On December 27, 1979, Glenda Lott, the minor daughter of Glen Lott, was driving her father's car with his permission. In the automobile with Glenda were three guest passengers: Anthony Bruce Moore, Richard Talley and Kelli Carter, the minor daughter of plaintiff Wayne Carter. As Glenda Lott was proceeding along the Sie Jenkins Road in Washington Parish, a vehicle driven by Nora Wallace was heading in the opposite direction. In the car with Mrs. Wallace were her children, Tommy Wallace, Jr. and Danica Wallace. Additionally, Mrs. Wallace's cousin Jim Paul Wallace was in the Wallace vehicle. As the two vehicles approached one another, Glenda Lott apparently lost control of her car, crossed the center line and struck the Wallace vehicle head-on. Major and/or minor injuries resulted to all parties. Unfortunately, Glenda Lott was fatally injured.
In February, 1980, Jim Paul Wallace settled his claim against Glen Lott and Lott's insurer, Safeco Insurance Company [hereinafter cited as Safeco] for $125.00.[1] In April, 1980, Nora Wallace filed suit against Lott and Safeco, individually, and on behalf of her minor children Tommy Wallace, Jr. and Danica Wallace.[2] Similarly, in June, 1980, Anthony Bruce Moore filed suit against Safeco and on the same date Richard Talley also filed a separate but similar suit against Safeco.[3] It is significant to note that in each of the above three lawsuits, the petition alleged damages in an amount exceeding the $100,000 liability limit in the policy Safeco issued to Lott.
Various negotiations ensued. As a result of these negotiations, in October of 1980 the Wallace, Moore and Talley lawsuits were settled. Nora Wallace received $50,000.00 for release of all claims against Lott and Safeco. Likewise, her children received a total of $375.00 for their injuries. Finally, in settlement of their claims against Safeco, Anthony Bruce Moore and Richard Talley received $18,500.00 and $28,000.00, respectively. Thus, when the $125.00 paid in settlement of Jim Paul Wallace's claim is added to these amounts, one finds that $97,000.00 of the $100,000.00 liability limit was expended in compromise of these claims.
Subsequent to the negotiations and settlements, on December 17, 1980, Wayne Carter filed the present suit individually and on behalf of his minor daughter Kelli against Safeco Insurance Company, Lott's liability insurer, Louisiana Farm Bureau Liability Insurance Company, Carter's UM carrier, and State Farm [Mutual] Automobile Insurance Company, Mrs. Wayne Carter's UM carrier.[4] Although the petition alleges acts of negligence on the part of Glenda Lott, nevertheless, the suit does not name Glen Lott as a defendant. Rather, Safeco is named as a defendant along the two UM carriers of Carter.[5] In January, 1981, Safeco answered Carter's suit denying all liability and pleading credit for the settlements made of the other claims.
On May 12, 1981, by way of a motion, Safeco deposited the remaining $3,000.00, *1079 plus costs, into the registry of the court inviting the plaintiff to withdraw the funds without condition. The plaintiff later accepted the invitation. On November 6, 1981, plaintiff amended his petition to allege that Safeco had been in bad faith when settling the other claims because, supposedly, plaintiff was never contacted and given the opportunity to participate in settlement negotiations. Plaintiff asserted it was bad faith to settle the multiple claims to the extent that Kelli did not receive her full share of the proceeds based upon her injury. In November, 1981, Safeco answered this amended petition countering with Safeco's responsibility to secure the best "deal" for Lott.
A trial on the merits was conducted, the purpose of which was to determine whether Safeco was in bad faith. The issue of liability for Glenda Lott's negligence was never questioned by Safeco. Indeed, oral argument of counsel indicates that liability was stipulated at the pre-trial conference in this litigation. Such was the impression of the trial judge. In his reasons for judgment, the trial judge states:
This matter started out as a suit for damages brought by the plaintiff and ended up as a suit by a tort claimant against the liability insurer for alleged bad faith.....
After the hearing, the trial judge ruled in favor of Safeco. Judgment was signed May 13, 1981, dismissing all claims made by plaintiff with prejudice.
On July 15, 1982, plaintiff filed a petition for appeal from the judgment of the lower court dated May 13, 1982. On the same day plaintiff filed another amending petition wherein Carter named the original defendant and also Glen Lott individually and as the administrator of the estate of Glenda Lott. Other than to assert that Glen is responsible for the acts of Glenda, the original petition was left unchanged. Although the amended petition was filed with leave of court, nevertheless, after Lott and Safeco filed appropriate motions, the judge vacated his order permitting the filing of this second amending petition. From the judgment dated October 6, 1982, relative to the motion to vacate, plaintiff filed another petition for appeal on October 12, 1982. Both petitions for appeal were made returnable to this court on November 1, 1982.
As we noted at the outset, these appeals involve only two issues: (1) Whether Safeco was in bad faith in settling the claims arising out of the auto accident without the participation of plaintiff, and (2) Was the trial judge correct in refusing to allow plaintiff to amend his petition after judgment. We shall address these questions in numerical order.
In his written reasons for judgment in favor of Safeco, the trial court was influenced by Mr. Carter's procrastination in seeking legal representation even after he had been advised of the necessity for such assistance. The trial judge stated:
There is no evidence whatsoever that the insurance company took advantage of Mr. Carter, but the Court must find that Mr. Carter failed to properly and timely prosecute his claim against this insurance company. He neither retained a lawyer nor presented the claim himself to the insurance company and cannot be heard to complain when the insurance company proceeded to protect its insured and settle all claims actively pending before it within its policy limits.
Additionally, the trial judge was swayed by the nature of Mr. Carter's conduct throughout most of this time frame. Because plaintiff was a friend of Glen Lott, plaintiff did not wish to sue Lott personally and expressed these sympathies many times. This fact, together with plaintiff's acknowledged self-assurance that his U.M. coverage would be adequate to compensate Kelli for her injuries, gave Safeco the impression that plaintiff was not interested in the method Safeco disposed of the various interests. Thus, it was the trial judge's opinion that the evidence in this case demonstrated conclusively that Safeco did not act in bad faith, and "at all times acted to protect its insured and to be fair to the claimants involved in this matter."
*1080 In Manieri v. Horace Mann Mutual Insurance Company, 350 So.2d 1247, 1248 (La.App. 4th Cir.1977), Judge (now Justice) Lemmon stated as follows:
A liability insurer faced with multiple claims to inadequate proceeds is generally not required to prorate, but may enter into compromise agreements with one or several claimants to the exclusion of others, even to the extent of exhausting the entire fund, as long as the compromises are reasonable and are made in good faith. (emphasis in original)
As authority for this proposition, Judge Lemmon cited the Supreme Court case of Richard v. Southern Farm Bureau Casualty Insurance Company, 254 La. 429, 223 So.2d 858 (1969). We note that the holding in Richard was expressly affirmed in the case of Holtzclaw v. Falco, Inc. 355 So.2d 1279 (La.1978). Thus, it is well-settled law in Louisiana that an insurer may enter into reasonable, good faith settlements even though such settlements exhaust or diminish the proceeds available to other claimants. Merritt v. New Orleans Public Service, 421 So.2d 1000 (La.App. 4th Cir.1982).
In order to determine what constitutes acting "reasonably" and in "good faith" in negotiating settlements with a claimant, one must look to the facts of the individual case. The trial judge set out the facts which led to his decision and we do not find any manifest error in his reasoning.
In reviewing the lower court's conclusion, we start with the axiom that a liability insurer's primary obligation is to its insured. Although it has been posited that liability insurance is a fund for the protection of injured claimants, nevertheless, we perceive such insurance to be chiefly for the defense of the insured against liability. Indeed, we have recently held that a liability insurer has an obligation to its insured not to arbitrarily refuse reasonable offers of settlement with policy limits, when, as here, its insured faces liability in excess of the policy limits. Domangue v. Henry, 394 So.2d 638 (La.App. 1st Cir.1980). In the final analysis, a liability insurer's foremost obligation is to its insured and not to the claimants.
We would be remiss if we attempted to analyze Safeco's performance in a vacuum. One simply cannot deny the fact that Wayne Carter's role in the intricacies of this lawsuit is paramount and determinative. The record indicates that Carter was simply not concerned with whatever settlements the other claimants effectuated with Safeco. Rather, he was looking exclusively to his own U.M. carriers as a source of funds to compensate Kelli Carter for her injuries.
Though overworked, the old aphorism that hindsight is always "20-20" is nevertheless applicable in this case. From our current perspective it is easy to say what Safeco should have done to make the settlements in this case more reasonable. Yet, such would be an injustice to Safeco in light of the facts. Because Carter essentially told Safeco not to worry about his claim, then Safeco justifiably assumed it could proceed with negotiations with the other parties. In short, the transcript demonstrates that Safeco's actions were based, in part, upon what Carter told them to do. Surely plaintiff cannot be now heard complaining because Safeco followed his advice! To fault Safeco now because it attempted to weigh everyone's interest, including Kelli's, would be to turn logic on its ear.
At the time negotiations with the other claimants were proceeding, and later when they were concluded, Carter had still not filed suit. More importantly, to all involved it appeared he was not interested in filing suit, but was simply going to collect from his U.M. carriers. In reliance upon Carter's actions, and in conformity with the moral and legal responsibility of an insurer to its insured, Safeco proceeded to gain for Glen Lott very favorable settlements of all claims filed at the time.
In conclusion, it is our opinion that plaintiff has failed to carry his burden of proof to show bad faith on the part of Safeco. As such, the trial court's judgment in favor of Safeco and against Carter dismissing all claims made by plaintiff was not manifestly *1081 erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Appellant has simply failed to produce any evidence to prove bad faith or unreasonableness on the part of Safeco. Accordingly, we affirm the trial court's decision on this issue.
The second issue presented to the court for our review is whether or not the trial court erred in not allowing plaintiff to amend his petition to name Glen Lott as a defendant. After trial on the merits, judgment was signed dismissing all claims made by plaintiff with prejudice. Thereafter, plaintiff sought to amend his petition on July 15, 1982, but was thwarted in his efforts. Plaintiff then sought review of this decision.[6]
Amendment of pleadings after an answer has been filed requires leave of court. La.C.C.P. art. 1151. The decision to allow an amendment is within the sound discretion of the trial judge and his ruling should not be disturbed on appeal unless there has been an abuse of the broad discretion vested in him. White v. Cumis Insurance Society, 415 So. 574 (La.App. 3rd Cir. 1982).
Under our modern procedural scheme, the legislature has expressly directed that the procedural rules are to be construed liberally with due regard for the fact that these rules are not an end in themselves, but rather implement the substantive law. La. C.C.P. art. 5051; McMahon, The Louisiana Code of Civil Procedure, 21 La.L.Rev. 1 (1960); see also Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267 (La. 1981). In commenting on the rules in the Code of Civil Procedure, the late Dean McMahon noted:
The new code embodies procedural rules designed to permit the trial of a case to serve as a search for the truth, and to have its decision based on the substantive law applicable, rather than upon technical rules of procedure.
From Tate, Amendment of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 211 (1969).
Although liberal amendment of pleadings is the policy in Louisiana, nevertheless, there exist limits on the extent to which this court will allow amendment. In this case, plaintiff did not originally name Lott as a defendant. It was only after a trial on the merits and a complete rejection of all of plaintiff's claims that he attempts to name Lott. This was two and one-half years after the accident.
Similarly, this is not a case of a closely related but incorrectly identified defendant, nor is this a case of a suit brought in the wrong capacity. Rather, plaintiff knew who Lott was, he knew where to find him, and he knew Lott's daughter was involved in the accident. In short, the search for the truth Dean McMahon talks about would not be furthered by allowing plaintiff to amend to name Lott. Amendment at this time would not serve any legitimate purpose other than to give plaintiff access to an additional source of funds that plaintiff delayed seeking from the beginning.
Under the facts in this case, we feel that permitting appellant to amend to name Lott after final judgment, in a situation where he could have been cited since the inception of the case, would work substantial prejudice to Glen Lott. Thus, we feel the trial judge did not abuse his discretion in rejecting the amendment and we therefore affirm his decision.
For the above and foregoing reasons, the combined appeals of appellant are rejected at his costs and the decision of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Jim Paul Wallace was a minor at the time of this accident. The claim was settled on behalf of Jim Paul by his tutor ad hoc Tommy Lee Wallace without suit being filed.
[2] Suit was also filed against Lumberman's Mutual Casualty Company, the Wallace's U.M. carrier.
[3] Moore & Talley also filed suit against their U.M. carriers.
[4] Kelli Carter has now obtained majority and has been properly joined in this lawsuit.
[5] The record reflects these U.M. carriers were later dismissed from the lawsuit after settlement of Carter's claim.
[6] The refusal by the trial court to allow plaintiff to amend his petition is an interlocutory judgment (La.C.C.P. art. 1841), which will not cause irreparable injury. As such, this judgment is not appealable. La.C.C.P. art. 2083. However, defendants neither filed a motion to dismiss (Uniform RulesCourts of Appeal, Rule 2-8) nor did they object to this Court considering this as an appeal. Therefore, we will address this issue on appeal.