**In re FORTY–EIGHT INSULATIONS, INC., Debtor.**

**Bankruptcy No. 85 B 05061.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 27, 1991.

**934**

Terry John Malik, Michael P. O'Neil and Brian A. Loftus, Winston & Strawn, Chicago, Ill., on briefs, for debtor.

Howard L. Adelman, Adelman, Gettleman & Merens, Chicago, Ill., on briefs; and Norman J. Barry, Rothschild, Barry & Myers, Chicago, Ill., on briefs, for Foster Wheeler Corp.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor, Forty–Eight Insulations, Inc., filed a motion asking this Court to approve a settlement agreement with several of its insurers. Foster Wheeler Corporation ("FWC") filed a motion to dismiss the Debtor's motion. For the reasons discussed below, FWC's motion to dismiss is

1. The Debtor previously requested approval of two other settlement agreements with insurers. The first motion for approval was voluntarily

granted and Forty–Eight's motion is denied.

## BACKGROUND

Forty–Eight was a manufacturer of insulation that used asbestos. Like other companies using asbestos in insulation, it became a defendant in thousands of lawsuits for asbestos related injuries. As a result, Forty–Eight filed for protection under Chapter 11 of the United States Bankruptcy Code in 1985. Twenty-six thousand lawsuits were then pending against Forty–Eight.

Forty–Eight is a wholly owned subsidiary of FWC. Since Forty–Eight filed for bankruptcy, FWC and its other subsidiaries have been named in asbestos related lawsuits. The plaintiffs in these actions have alleged that FWC and some of its other subsidiaries incorporated asbestos into other products manufactured by it or alleged that FWC is a "successor" or "alter-ego" of Forty–Eight. FWC carried several general comprehensive insurance policies that covered it against certain liabilities and also covered its subsidiaries and affiliates as additional insureds. Forty–Eight is currently seeking a declaration of its rights under those policies in an action currently pending before the Northern District of Illinois, *Forty–Eight v. Aetna, et al.*, Case No. 87 C 10594.

On February 27, 1991, Forty–Eight filed a Motion for Approval of Compromise of Controversy with Cravens, Dargen & Co./Pacific Coast, and Ratification of the First Amended and Restated settlement agreement By and Between Forty–Eight Insulations, Inc., and Cravens, Dargen & Co./Pacific Coast and INA ("Compromise Motion").[1] The Compromise Motion seeks approval of a settlement agreement between Forty–Eight and several insurance companies. The settlement agreement resolves disputes over coverage under policies issued by the following insurers:

1. Insurance Company of North America ("INA"), which issued several compre-

dismissed by the Debtor; the second motion was also dismissed by the Debtor following objection of FWC.

hensive general liability policies to Forty–Eight from October 31, 1955 to October 31, 1972. INA is a CIGNA Company.

2. "Another CIGNA company" which issued policies to FWC.[2]

3. Central National Insurance Company of Omaha ("Central"), which issued Policy CNU 12 33 97 to FWC for the period October 1, 1975 to March 1, 1977. Cravens, Dargen, a CIGNA company, is managing general agent for Central with respect to this policy.

The settlement agreement requires Cravens, Dargen and INA to pay Forty–Eight $1,416,667.00 and $35,000.00, respectively. In consideration for these payments, INA, Cravens, Dargen and Central (collectively the "Companies") are to be: (a) released from further obligation to Forty–Eight under the Central policy; (b) released from any further obligations to any other person with respect to the Central policy except to the extent unrelated to (i) actions or failure to act of Forty–Eight, or (ii) products liability; and (c) released from further obligation to any other person under any of the policies issued to FWC, except obligations that are unrelated to actions, activities, or omissions of Forty–Eight. In addition, following execution of the settlement agreement, Central is to be dismissed from the action currently pending in the district court.[3]

The settlement agreement is to be effectuated by an injunction and channeling order similar to that entered in the Johns–Manville bankruptcy case that enjoined claims against insurance companies following a settlement on the policies. The injunction proposed in this case would enjoin the assertion by anyone of any claims against the Companies under any of the policies covered by the settlement agreement.

Forty–Eight is no longer in business. It intends to use the proceeds of the settlement agreement to fund a liquidating Chapter 11 plan under which all its assets

will be distributed to creditors. Those creditors almost entirely consist of tort claimants with asbestos related injuries and professionals who rendered services in this case. Forty–Eight has few trade or other creditors.

FWC filed a motion to dismiss the Compromise Motion. The motion to dismiss is based on these grounds:

1. This Court lacks authority to enter the broad injunctive and declaratory relief required by the settlement agreement.

2. Forty–Eight does not have the right to release FWC's contractual rights under the insurance policies issued to FWC under which Forty–Eight is an additional insured.

3. Discharging the liabilities of a third party to another third party would violate section 524(e) of the bankruptcy code.

4. The Debtor is not entitled to relief under state law as the policies are excess policies; the Debtor has not shown that the underlying insurance has been exhausted; and Forty–Eight's right to payment under the policies has not accrued.

## DISCUSSION

■ The principal issue here is whether this Court has authority to grant the relief sought that would bar future claims by FWC under the policies.

Forty–Eight, the Official Committee of Asbestos Claimants and the Legal Representative for Future Asbestos Claimants allege in their Joint Response to Foster Wheeler's Motion to Dismiss ("Response"), that FWC's rights under the policies will not be impaired because those rights will be channelled to Forty–Eight's estate by an injunction and channeling order. In addition, Forty–Eight contends that there have not been any judgments or settlements in the lawsuits brought against FWC and, therefore, FWC has not established that it has any rights under the policies that would be impaired.

---

**2.** The insurance company is not otherwise identified in Forty–Eight's motion, nor are the policies specifically identified. Forty–Eight generally refers to the policies as the "FWC Policies".

**3.** Since the parties have already executed the settlement agreement, Central has already been dismissed from this litigation.

The settlement agreement requires the Companies to be released from any further obligation to any entity under the policies issued to FWC, except obligations that are unrelated to actions, activities, or omissions of Forty–Eight. That broad release language would impair FWC's rights under the policies. FWC has a contract with the insurers that allows it to make claims directly against the insurers upon the happening of specified conditions. If the settlement agreement and proposed order are approved, this right will no longer exist. Forty–Eight suggests that FWC's rights will be protected because FWC's claims against those policies will be channeled to Forty–Eight's estate. What exactly that means, however, is not clear from the settlement agreement or proposed order. Even if FWC's claims under the policies were channelled to Forty–Eight's estate, FWC's interests are not necessarily protected; the estate could be depleted before FWC has an opportunity to make a claim. Most important, however, the channeling order, whatever benefits it might confer, would not be the same thing as FWC's contractual rights against the insurers, which would be extinguished. If FWC does not choose to relinquish those rights, then the settlement would impair FWC's rights, even if the economic effect were otherwise ameliorated.

FWC disputes Forty–Eight's contention that this Court may grant the requested injunctive and declaratory relief under section 105(a) of the bankruptcy code. Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

The issue of a bankruptcy court's authority to grant broad injunctive relief similar to this has arisen in other bankruptcies that resulted from massive tort litigation; see, *MacArthur v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), cert. denied 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Unarco Bloomington Factory Workers v. UNR Industries, Inc.*, 124 B.R. 268 (N.D.Ill.1990) and *In re A.H. Robins*

*Company, Inc.*, 880 F.2d 694 (4th Cir.1989), cert. denied 493 U.S. 959, 110 S.Ct. 376, 107 L.Ed.2d 362 (1989). These bankruptcies and subsequent reorganizations have spawned similar insurance settlements, trusts funded with the proceeds and tort claimants enjoined from suing the insurers and other parties. In each of these cases, the bankruptcy court's authority to enter an injunction barring claims against the insurers was questioned; in each, that authority was found to exist.

The injunctive relief requested in this case, however, extends beyond that granted in the other mass tort cases. Here, not only is this Court being asked to enjoin tort claimants from asserting claims against the settling insurers, but this Court is also being asked to enjoin a named insured, who is neither a debtor in this bankruptcy nor a creditor of the Debtor, from asserting claims under an insurance policy that it contracted and paid for.

As Forty–Eight points out, the Seventh Circuit has upheld an injunction enjoining creditors from asserting actions against third parties entered as part of a settlement agreement. In *In the Matter of Energy Cooperative, Inc.*, 886 F.2d 921 (7th Cir.1989), the court upheld the district court's authority to enter an injunction prohibiting creditors from asserting causes of action that were the "exclusive property" of the estate. The Seventh Circuit concluded that under section 105(a) "the court [had] authority to enjoin actions which threaten the integrity of the bankrupt's estate." *ECI* at 929.

The injunction in *ECI* was part of a settlement agreement between the trustee in bankruptcy, the Member–Owners of ECI (shareholders) and certain lending banks. The settlement agreement resolved several proceedings the estate had filed for breach of contract, on promissory notes and to avoid preferences.

The injunction in *ECI*, however, was limited to enjoining causes of action that were the "exclusive property" of the debtor's estate. Indeed, the Seventh Circuit modified the language of the injunction after it determined that the district court "clearly

intended" to so limit the injunction. The only effect of the injunction was to bar suits by parties claiming through ECI, such as its unsatisfied creditors, who had no independent standing. The effect of the injunction was therefore no greater than the effect of a customary release.

An entirely different situation is presented in this case. Forty–Eight incorrectly asserts that the insurance policies are property of the estate. There is no question that rights arising from insurance policies fall within the broad definition of property of the estate under section 541. See, *United States v. Whiting Pools Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Section 541 does not, however, expand the debtor's rights. In this case, both the Debtor and FWC have rights under and interests in the policies. Only Forty–Eight's interests are property of the estate. FWC's claims against the insurers or its interests in the insurance policies are not property of Forty–Eight's estate. This creates issues regarding a court's ability to impair a third party's contract and property rights that never arose in *ECI*. *ECI* does not support the relief sought in this case.

There is, however, circuit level authority that does appear to support the Debtor's position. Unfortunately for the Debtor, this Court declines to follow it. Forty–Eight has modeled the settlement agreement and proposed order on the injunction and channeling order approved in the Johns–Manville reorganization. Forty–Eight therefore relies heavily on *MacArthur Co., v. Johns–Manville Corp.*, above, 837 F.2d 89, to support its position that this Court has authority to grant the relief sought here.

In *MacArthur*, a distributor of Manville's asbestos products objected to the settlement agreement and injunctive orders entered in the Manville reorganization. The distributor claimed an interest in insurance policies covered by the settlement agreement by virtue of a vendor endorsement to the policies. The endorsement provided coverage to distributors for product liability claims arising from their distribution of Manville's products. The injunction entered as part of the settlement enjoined all suits against the insurers that arose out of the policies. MacArthur argued that the court could not impair its contractual rights under the policies.

The Second Circuit upheld the bankruptcy court's authority to grant the injunctive relief "pursuant to its equitable and statutory powers to dispose of the debtor's property free and clear of third-party interests and to channel those interests to the proceeds thereby created." 837 F.2d at 91. The court relied on sections 363(f) and 105(a) for the bankruptcy court's authority to enter the channeling orders and injunctions. Although recognizing that the insurance settlement was not the same as a sale under section 363(f),[4] the court reasoned that the principle of "preserving the debtor's estate for the creditors and funneling claims to one proceeding in the bankruptcy court remains the same." 837 F.2d at 94.

The Second Circuit also rejected MacArthur's argument that its interests in the policies could not be impaired. The court initially determined that MacArthur's interests in the policies were "completely derivative of Manville's rights as the primary insured" and those derivative rights were the same as the rights of the asbestos victims who were also being enjoined from asserting claims directly against the insurers. Both *MacArthur* and the victims were looking to insurance proceeds to compensate for harm caused by Manville. 837 F.2d at 92. The court then concluded that those claims were "inseparable" from Man-

---

**4.** Section 363(f) provides:

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction or such interest.

ville's interests in the insurance policies and consequently within the bankruptcy court's jurisdiction. 837 F.2d at 93. Finally, the Second Circuit determined that MacArthur had an alternate remedy. MacArthur could assert its claims against the settlement fund the same as the asbestos victims. 837 F.2d at 94.

The *MacArthur* court, therefore, dealt with MacArthur's rights under the policy endorsement as if they were somehow property of the debtor, within the jurisdiction of the bankruptcy court. Even on the facts in that case, it is hard to follow the Second Circuit's reasoning. Under section 541(a) of the bankruptcy code, only "legal or equitable interests of the debtor" become property of the estate. In *MacArthur*, as here, the issue was a non-debtor's interests in an insurance policy. Another party's interests do not become property of the estate, and therefore cannot be sold under section 363, which deals with sales of only property of the estate.[5] Nor do we understand how a named insured's rights against an insurer are derivative in the same way as a tort claimant's. A tort claimant has a claim against the debtor that can be dealt with in bankruptcy. The claimant's rights against insurers, like his or her rights against other assets of the debtor, depend entirely upon the success of the claim against the debtor. So it may be fair to say that a tort claimant's rights against the insurer are derivative. It might be clearer to say simply that tort claimants have no "legal or equitable interest" in the insurance policy in the first place, any more than they do in other property of the estate, so that their property rights are not impaired by a settlement of the debtor's claim to coverage.

MacArthur, and FWC here, however, do have "legal or equitable interests" in the policies. FWC is a named insured with the right to make direct claims on the insurers if the conditions of the policies are satisfied. It has rights to be defended and to

indemnification that do not depend upon a prior resolution of any claim against Forty–Eight. And providing an alternate remedy does not create a power to deprive FWC of those rights without its consent. This court, therefore, declines to follow *MacArthur*'s holding that contract rights not belonging to the debtor can be impaired by an order of the bankruptcy court.

Finally, it is clear that in the Manville cases the courts were driven to find a means to protect the asbestos victims *and* successfully reorganize the company. Even assuming that worthy result is reason to find equitable powers that otherwise would not exist, in this case the Debtor is not reorganizing, but liquidating. No ongoing business will be protected by a plan. So this case is not the same as Manville.

Other cases involving channeling orders and injunctions are also distinguishable. In *Robins*, 880 F.2d 694, suits against Robin's directors, attorneys and others as joint tort-feasors were enjoined by an injunction entered as part of the plan of reorganization. The court determined that the injunction properly protected the plan of reorganization and the estate because the joint tort-feasors would have had rights of contribution or indemnification against the debtor. Further, the court found that the tort claims would be fully satisfied under the plan. 880 F.2d at 701. Here, any claim FWC might make on the policies would not result in contribution or indemnification claims against Forty–Eight, and FWC is not a tort claimant seeking compensation for injuries (full compensation was assured in *Robins*) but a party to contract trying to preserve its bargained-for rights.

In *UNR Industries, Inc.*, 124 B.R. at 268, the district court approved an order that enjoined asbestos victims from asserting claims against UNR or its insurers, without even discussing the court's authori-

---

**5.** Actually, section 363(h) does authorize the sale of "both the estate's interest ... and the interest of any co-owner in property in which the debtor had, the time of the commencement of the case, an undivided interest as tenant in

common, joint tenant, or tenant by the entirety" under certain conditions. Subsection (h) has no application here. It should be noted that Forty–Eight is not relying on section 363.

ty under the bankruptcy code.[6] The tort-claimants interests involved in those cases are completely different than the contractual rights that Forty–Eight asks us to extinguish in this case. This difference is made even clearer by the district court's determination in *UNR* that the claimants objecting to the injunction did not have any right to bring a direct action against the insurers on the policies. 124 B.R. at 277.

■ Admonished by the Seventh Circuit to "deprecate flaccid invocations of 'equity' in bankruptcy proceedings"[7] this Court concludes that it does not have any authority under the bankruptcy code to enter an injunction that impairs a non-debtor's contractual rights against another non-debtor.

Forty–Eight has also failed to establish a right to such injunctive relief under non-bankruptcy law. Forty–Eight cites cases holding that additional insureds possess the same rights as the named insureds under an insurance policies. See, *National Auto & Casualty Ins. Co., v. California Casualty Insurance Co.*, 188 Cal.Rptr. 670, 672, 139 Cal.App.3d 336 (2d Dist., 1983). However, these cases do not support a settlement agreement that completely abrogates the named insured's rights under the policies. When FWC purchased the policies it assumed the risk that the policies might be exhausted by claims made by the additional insureds, not that its rights would be extinguished by a separate agreement between one of the additional insureds and the insurer. Forty–Eight also refers us to cases holding an insurer may settlem claims with some claimants even if such settlement necessarily excludes other claimants. See, *Carter v. Safeco Ins. Co.*, 435 So.2d 1076 (La.App. 1st Cir.1983). These cases are likewise inapposite, because FWC is not a claimant but an insured.

Both parties also cite *Local Number 93, International Assoc. of Firefighters v.*

*Cleveland,* 478 U.S. 501, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). Forty–Eight contends that *Firefighters* authorized a court to bind a non-party as part of a settlement agreement. FWC argues that *Firefighters* prevents parties to a settlement agreement from impairing rights of a non-settling party.

*Firefighters* involved a class action by a group ·of black and hispanic firefighters against the city for discrimination. A consent decree was approved over the objections of a labor union which had intervened as of right in the case. The Supreme Court determined that the labor union could not block the consent decree "merely by withholding its consent." 478 U.S. at 529, 106 S.Ct. at 3079. Forty–Eight relies on this language to conclude that FWC cannot. block this settlement agreement by withholding its consent. But the Supreme Court explained, 478 U.S. at 530, 106 S.Ct. at 3079 (emphasis added; citation omitted):

[O]f course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree. However, the consent decree entered here does not bind Local 93 to do or not to do anything. It imposes no legal duties or obligations on the Union at all; only the parties to the decree can be held in contempt of court for failure to comply with its terms. *Moreover, the consent decree does not purport to resolve any claims the Union might have under the Fourteenth Amendment, or as a matter of contract.*

The decree sought here would purport to resolve claims FWC might have under its contracts of insurance. So *Firefighters* does not support the entry of that order.

The parties have also argued about whether the policies have been exhausted and whether Forty–Eight's right to payment under the policies has accrued. They

---

**6.** The objection to the injunction in *Unarco* was that it violated section 524(e) which provides that a discharge of the debtor does not affect the liability of any other party. The district court determined that the injunction entered as part of a settlement, prior to discharge, did not violate section 524(e). FWC also alleges that the settlement agreement and proposed order vio-

late section 524(e). Because we have determined that we do not have authority to grant the relief requested in this case, we will not address that issue.

**7.** *In the Matter of Lapiana,* 909 F.2d 221, 224 (7th Cir.1990).

submitted supplemental authority on this issue following the Seventh Circuit's opinion in *UNR Industries Inc., v. Continental Casualty Company*, 942 F.2d 1101 (7th Cir.1991). That decision may support the argument that insurance proceeds can be reached and eventually exhausted through a chapter 11 plan as if it were a settlement of claims covered by the policies. And it may bear on the liability of an excess carrier when the underlying coverage is not exhausted. But those are not the problems here. First, the amount of the settlement here is less than the face amount of the policies, so that it is impossible to say that this settlement would exhaust the policies. Second, *Continental Casualties* involved a dispute between an insured (the debtor, UNR) and its insurer about coverage under the terms of the policy. If the Debtor here and the insurers want to settle their own coverage disputes, they may do so. But nothing in *Continental Casualties* allows them to extinguish, by agreement among themselves and this Court, the contract rights of another insured not a party to that settlement. If the policies are, in fact, exhausted, by settlement or otherwise, as a result of tort claims against Forty–Eight, then FWC may have no further rights under the policies. But that would be a consequence of the contractual limitations on FWC's rights that it agreed to when it bought the policies. It would not be the consequence of this Court's abrogation of those rights pursuant to a settlement between other parties.

## CONCLUSION

Forty–Eight has asked this Court to approve a settlement agreement and proposed order that would enjoin a named insured from asserting any claims under its own insurance policies. This Court concludes that it is not authorized by the bankruptcy code or non-bankruptcy law to enter an order that extinguishes a non-debtor's contract rights against its own insurers. Therefore, this Court grants FWC's motion to dismiss the motion of Forty–Eight seeking approval of the settlement agreement. Forty–Eight's motion will be denied.

An appropriate order will be entered.