In re FORTY–EIGHT INSULATIONS, INC., Debtor.

No. 92 C 0330.

United States District Court, N.D. Illinois, E.D.

Dec. 14, 1992.

## MEMORANDUM OPINION
## AND ORDER

MAROVICH, District Judge.

In this bankruptcy, the debtor, Forty–Eight Insulations, Inc., ("Forty–Eight") moved for approval of a compromise with some of its insurers. In response, Forty–Eight's parent, Foster Wheeler Corporation ("FWC"), moved to dismiss the motion. On November 27, 1991, the Bankruptcy Court denied Forty–Eight's motion and granted Foster Wheeler's. 133 B.R. 973. Forty–Eight appealed to this court. After carefully reviewing briefs submitted by the parties and also by the Official Creditors' Committee of Asbestos–Related Claimants, we affirm the Bankruptcy Court.

## BACKGROUND[1]

FWC is the parent of Forty–Eight, a manufacturer of asbestos related products. After Forty–Eight filed for bankruptcy in 1985, FWC was named in various asbestos suits. The plaintiffs in some of the suits alleged that FWC incorporated asbestos into its products or that FWC is the successor or alter-ego of Forty–Eight. FWC and Forty–Eight are named insureds under a number of liability insurance policies.

On February 27, 1991, Forty–Eight filed a motion for approval of a settlement between it and insurance policies issued by the following insurers:

    1. Insurance Company of North America ("INA"), which issued several comprehensive general liability policies to

---

1. For a complete discussion of the background facts in this matter, the reader should refer to the Bankruptcy Court's memorandum opinion which accompanies its November 27, 1991 order. *In re Forty–Eight Insulations, Inc.,* 133 B.R. 973 (N.D.Ill.1991). We will assume the reader is familiar with that opinion, and we will not repeat any of the facts contained therein.

Forty–Eight from October 31, 1955 to October 31, 1972. INA is a CIGNA company ("Companies").

2. Another CIGNA company which issued policies to FWC. [As noted by the Bankruptcy Court, these other policies are "not otherwise identified in Forty–Eight's motion, nor are the policies specifically identified. Forty–Eight generally refers to the policies as the "FWC Policies."]

3. Central National Insurance Company of Omaha ("Central"), which issued Policy CNU 12 33 97 to FWC for the period October 1, 1975 to March 1, 1977. [Cravens, Dargen, a CIGNA company, is managing general agent for Central with respect to this policy.]

*In re Forty–Eight Insulations, Inc.,* 133 B.R. at 974–75. In consideration of payments for $1,416,667 from Cravens and $35,000 from INA to Forty–Eight, the above insurers would be

(a) released from further obligation to Forty–Eight under the Central policy;

(b) released from any further obligations to any other person with respect to the Central policy except to the extent unrelated to

(i) actions or failure to act of Forty–Eight, or

(ii) *products liability;* and

(c) released from further obligation to any other person under any of the policies issued to FWC, except obligations that are unrelated to actions, activities, or omissions of Forty–Eight.

*Id.* at 975. To execute the settlement, the movant requested that the Bankruptcy Court enter an injunction and channelling order similar to that entered in the *Johns–Manville* bankruptcy. Under such an order, FWC could not assert its claims under the policies to the insurers; instead, those claims are channelled away from the insurers and redirected at the proceeds of the settlement. *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 91 (2nd Cir. 1988). Forty–Eight intends to use the proceeds of the settlement agreement to fund a liquidating Chapter 11 plan under which all of its assets will be distributed to credi-

tors. Those creditors consist entirely of tort claimants with asbestos related injuries and professionals who rendered services in this case.

FWC filed a motion to dismiss the compromise motion for a variety of reasons including that the Bankruptcy Court lacked authority to enter the broad injunctive relief required by the settlement and that Forty–Eight does not have the right to release FWC's contractual rights under the insurance policies issued to FWC under which Forty–Eight is an additional insured. *Id.* at 975. The Bankruptcy Court decided that the principal issue was whether it had authority to bar future claims by FWC under the policies and therefore whether it had the authority to grant the relief sought. The Bankruptcy Court concluded that it did not have the authority to grant the relief sought for a variety of reasons.

First, the Bankruptcy Court found that if the settlement was approved, FWC would loose its contract right to make claims directly against the insurers. *Forty–Eight,* at 975–76. The Bankruptcy Court rejected as analogous similar settlements in other mass tort litigation because the injunctive relief in this case is broader than the typical situation. Here, the Bankruptcy Court was asked not only to enjoin tort claimants from asserting claims against the settling insurers, but also to enjoin a named insured, who is neither a debtor in the bankruptcy nor a creditor of the debtor, from asserting claims under an insurance policy that is contracted and paid for. *Id.* at 976–77.

Second, the Bankruptcy Court found that only Forty–Eight's rights under the policies were property of the estate, not FWC's. The only circuit authority which has addressed a similar issue is the Second Circuit in *MacArthur.* In *MacArthur,* a distributor of Johns–Manville, claimed an interest in Johns–Manville's insurance policies pursuant to a vendor's endorsement to the policies which provided coverage to distributors for product liability claims arising from their distribution of Manville's products. The injunction entered in that suit enjoined all suits against the insurers that

arose out of the policies. MacArthur argued that the court could not impair its contractual rights under the policies. The Second Circuit upheld the bankruptcy court's authority to grant the injunctive relief pursuant to its equitable and statutory powers to dispose of the debtor's property free and clear of third-party interests and to channel those interests to the proceeds thereby created." *MacArthur,* 837 F.2d at 91. The Bankruptcy Court distinguished *MacArthur* because the type of channelling order present to it in the case at hand would essentially abolish one party's contract rights. Forty–Eight raised four issues on appeal:

1) Are Forty–Eight's interests as a coinsured under the subject insurance policies property of its estate, thereby providing a sufficient basis to permit the bankruptcy court to enter orders enabling Forty–Eight to realize the value of those interests?

2) Did the Bankruptcy Court err in concluding that it lacked the power to "channel" Foster Wheeler's putative claims against Forty–Eight with regard to the subject policies to Forty–Eight's estate?

3) Did the Bankruptcy Court err in declining to follow the decision rendered in *MacArthur?*

4) In determining the respective rights of Forty–Eight and Foster Wheeler under the subject policies, did the bankruptcy court misconstrue (a) the terms of the compromise, (b) the terms of the subject policies, and (c) applicable state law governing the policies?

Appellant's Brief at 1–2.

## DISCUSSION

The parties only present questions of law for us to review; therefore, our standard of review is *de novo. In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992).

This case presents us with a scenario which at first glance appears complex and difficult, but with closer examination reveals one straightforward question: Can the subsidiary of a parent corporation abrogate the contract rights of its parent by settling with insurance companies which hold policies in both the parent's and the subsidiary's names? The parent purchased the policies and paid the premiums on the policies. Now, its subsidiary argues that it can settle the policies and as part of the settlement that it can deny the parent any coverage rights that the parent may have under the policy. Because the proposed settlement between Forty–Eight and the insurance companies would essentially wipe out FWC's rights under the policies, we refuse to approve the settlement.

■ Forty–Eight presents us with four issues on review. The first question before the court is whether Forty–Eight's interests as a co-insured under the subject policies are property of its estate which would then allow the Bankruptcy Court to enter orders which enable Forty–Eight to realize the value of those interests. This issue was decided by the bankruptcy court judge. The court held that FWC's property rights in the insurance policies are not part of the estate. We affirm.

■ Rights arising from insurance policies fall within the broad definition of property of the estate under § 541 of the Bankruptcy Code. *See United States v. Whiting Pools Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). The bankruptcy court correctly distinguished, however, the rights of the debtor from the rights of FWC. Only Forty–Eight's interests are part of the estate. FWC's interest in the insurance policies is not part of the estate. The bankruptcy judge correctly noted that holding otherwise would allow the court to impair a third party's contract and property rights.

■ Forty–Eight cites to the Second Circuit case of *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89 (2d. Cir.1988), *cert. denied,* 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) for authority because the Second Circuit held in *MacArthur* that the policy endorsement was property of the debtor. The bankruptcy judge held that *MacArthur* was inapplicable and its reasoning difficult to follow. Instead, the judge looked to § 514(a) of the Bankruptcy Code which states that only "legal or equi-

table interests of the debtor" become property of the estate. The court correctly held that another party's interests do not become property of the estate and therefore cannot be sold under § 363 which deals with the sale of property of the estate.

■ We agree with the bankruptcy judge when he stated:

> MacArthur, and FWC here, however, do have "legal or equitable interests" in the policies. FWC is a named insured with the right to make direct claims on the insurers if the conditions of the policies are satisfied. It has rights to be defended and to indemnification that do not depend upon a prior resolution of any claim against Forty–Eight. And providing an alternate remedy does not create a power to deprive FWC of those rights without its consent. This court, therefore, declines to follow *MacArthur*'s holding that contract rights not belonging to the debtor can be impaired by an order of the bankruptcy court.

The judge further distinguished *MacArthur* because it involved a reorganization; whereas the case at hand involves a liquidation. We fail to find that the bankruptcy judge erred in holding that FWC's contract rights under the policies were not property interests of the estate, and we therefore affirm the judge's ruling as to this issue.

The second issue raised on appeal is whether the Bankruptcy Court erred in concluding that it lacked the power to "channel" FWC's putative claims against Forty–Eight to the estate. First, we find that the bankruptcy judge specifically held that the Bankruptcy Court had the power to offer broad injunctive relief. *In re Forty–Eight Insulations*, 133 B.R. 973, 976 (Bankr.N.D.Ill.1991). In the case at hand, however, Judge Barliant determined that the relief requested here was relief which extended beyond that which is normally granted in other mass tort cases.

■ The bankruptcy court has the authority to grant broad injunctive relief similar to the type involved here that results from massive tort litigation. *See UNARCO Bloomington Factory Workers v. UNR Industries, Inc.*, 124 B.R. 268 (N.D.Ill.1990); *A.H. Robins Co. v. Mabey*, 880 F.2d 694 (4th Cir.1989). These courts, as well as the Second Circuit in *MacArthur*, involved the bankruptcy court's authority to enter an injunction barring claims against insurers.

■ The settlement agreement here, however, contained language which released the companies from any further obligation to any entity under the policies issued to FWC. Judge Barliant held:

> That broad release language would impair FWC's rights under the policies. FWC has a contract with the insurers that allows it to make claims directly against the insurers upon the happening of specified conditions. If the settlement agreement and proposed order are approved, this right will no longer exist. . . . Even if FWC's claims under the policies were channelled to Forty–Eight's estate, FWC's interests are not necessarily protected; the estate could be depleted before FWC has an opportunity to make a claim. Most important, however, the channelling order, whatever benefits it might confer, would not be the same thing as FWC's contractual rights against the insurers, which would be extinguished.

*Id.* at 976. Judge Barliant distinguished the type of relief awarded in the above cases from the type requested here. In this case, the court is not only being asked to enjoin tort claimants from asserting claims against the settling insurers, but also to enjoin a named insured who is neither a debtor nor a creditor of the debtor, from asserting claims under an insurance policy that it contracted and paid for. These contract rights are separate and distinct from the tort claimants' claims in the above-mentioned cases, because these rights arise from a bargained-for-exchange between the parties.

The Bankruptcy Court did not hold that it lacked the authority to grant injunctive relief, but the court did find that the relief sought here was inappropriate. In light of the foregoing discussion regarding whether Forty–Eight's interests and FWC's inter-

ests are property of the estate, the Bankruptcy Court correctly held that the injunctive relief was improper. Because the relief sought here would abrogate the contract rights of FWC, the court refused to approve the settlement. The Bankruptcy Court did not err in holding that it lacked the authority to approve such a settlement.

■ The third issue on appeal is whether the Bankruptcy Court erred when it refused to follow the Second Circuit's decision in *MacArthur*. The Bankruptcy Court, as a district court, is required to follow Seventh Circuit precedent. *Redden v. Wal–Mart Stores, Inc.*, 806 F.Supp. 210 (N.D.Ind.1992). The Seventh Circuit addressed a similar situation in *In the Matter of Energy Cooperative, Inc.*, 814 F.2d 1226 (7th Cir.1987). In that case, however, the Seventh Circuit upheld an injunction enjoining auditors from asserting actions against third parties entered as part of a settlement agreement.

The distinction here between the *Cooperative* settlement and the Forty–Eight settlement is that in the former, the Seventh Circuit limited the injunction to enjoining causes of action that were "exclusive property" of the debtor's estate. As we held above, FWC's contract rights are *not* the exclusive property of Forty–Eight's estate. Therefore, the Seventh Circuit has not addressed the exact issue presented here.

The Bankruptcy Court examined the reasoning in the *MacArthur* decision carefully. After determining that contractual rights would be usurped by following the type of settlement agreement in *MacArthur*, the judge distinguished the facts of *MacArthur* from those presented in the case at hand. Recognizing that the Forty–Eight case involves a liquidation, not a reorganization, and that FWC holds separate and distinct contract rights under the insurance policies, the bankruptcy judge correctly distinguished the type of relief approved in *MacArthur* from the type of relief sought here.

The final issue on appeal is whether the Bankruptcy Court misconstrued the terms of the policies, the terms of the settlement agreement, and the applicable state law governing the policies. After reviewing the Bankruptcy Court's opinion as well as the full record, we fail to find error in the Bankruptcy Court's findings. Therefore, we affirm the Bankruptcy Court's decision.

We are aware of the judicial desire to encourage settlement agreements, especially in complex tort litigation such as the type presented here. Recognizing that we have refused to approve the settlement here, however, is not an indication that we wish to prolong this litigation any further. Yet, we are very cognizant of the fact that settlement agreements work efficiently and fairly only when all parties with an interest in the conflict are represented in the settlement. We would no sooner approve a settlement between the insurance companies and FWC than the one presented to us here if Forty–Eight were not a part of that settlement.

Certainly, Forty–Eight holds some property rights under the policies. FWC also holds some property rights under the policies. Although Forty–Eight's rights may be channelled to the estate, FWC's may not be, at least without FWC's consent.

If the parties can delineate the separate and distinct rights of Forty–Eight and FWC, then a settlement agreement which takes into account those separate and distinct rights would reflect a more judicious result. What the court refuses to do, however, is to approve a settlement which abolishes the rights of one party without even having consulted that party during the settlement talks. The court encourages the parties to continue to strive to reach a result in this conflict, keeping in mind at all times that the insurance policies secure rights for both Forty–Eight and FWC. A proper settlement would take into account both of those parties' rights.

For the foregoing reasons, we deny the appeal by Forty–Eight and affirm the Bankruptcy Court.

ENTER: